Chief Judge Breitel.
Insured Sturges, plaintiff and appel *71 lant, seeks judgment declaring defendant insurance company obligated under its general comprehensive liability policy to defend and, if necessary, indemnify Sturges in an action brought against Sturges by one of its customers, Americana. Sturges, a manufacturer of ski straps, has been sued by Americana for warranty breach and negligence in the sale of allegedly defective straps which Americana used in its production and distribution of ski bindings. Trial Term dismissed the complaint after trial, and a divided Appellate Division affirmed.
The issue is whether in Americana’s action against the manufacturer Sturges, Americana alleged that Americana’s property had been harmed by Sturges’ defective product. If so, there may be insurance coverage. If not, coverage was excluded under the policy issued by the insurer to Sturges. A related issue is whether under the pleadings in the Americana action any harm to Americana’s property was alleged to have been due to defective design by Sturges in its manufacture of ski straps. If so, coverage was excluded by express provision in the policy.
The order of the Appellate Division should be reversed and declaratory judgment granted to the manufacturer, Sturges, to the extent of requiring the insurer to defend against Americana’s action, at least until it is unequivocally established that the harm caused to Americana was not within the coverage of the policy. As Mr. Justice Kane properly noted in dissent below, Americana’s complaint alleges that its bindings were damaged by the Sturges straps. It is possible, if not likely, that Americana will seek to establish that because of the defective components its bindings were diminished in value beyond the cost of the replacement straps, and also that it sustained harm in taking back and repairing the bindings. Such would constitute covered "damage” to the bindings proper and not merely excluded harm to the insured’s straps. The loss alleged may therefore be within the policy coverage, and the insurer is obliged to defend Sturges until it is shown otherwise.
In 1971 Sturges manufactured, on special order and specifications, runaway straps for the Americana Ski Company, which manufactured ski bindings. They were allegedly warranted to withstand a pull of at least 1,200 pounds. The straps, however, because of allegedly defective stitching, broke under stress. Numerous bindings were returned by ski retailers to Americana and orders for bindings were canceled. *72 Americana sued Sturges for breach of express warranty and negligent manufacture, as well as harm to its firm name and good will.
Sturges, covered by a comprehensive general liability policy issued by the insurer, Utica Mutual, asked the insurer to defend the action. The insurer declined, contending that there was no coverage, and therefore no duty to defend.
The insurance policy at issue covers, among other risks, liability for "property damage” defined as "injury to or destruction of tangible property.” The damage must result from an "occurrence”, equated with "an accident”. The insurer asserts that there was no "occurrence”. These terms are, however, obviously broad, and would encompass the unexpected breakage of the Sturges straps and other harm flowing from it.
The insurer argues that Americana’s alleged loss falls under either of two policy exclusions.
Clause "L” excludes "property damage to the named insured’s products arising out of such products or any part of such products”. Damage, therefore, to Americana’s property, the bindings, on the other hand, presumably would not be excluded.
An insurer’s obligation to defend is broader than its obligation to pay, and arises whenever the complaint "alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy” (Great Amer. Ins. Co. v London Records, 35 AD2d 661, 662; see International Paper Co. v Continental Cas. Co., 35 NY2d 322, 326; Prashker v United States Guar. Co., 1 NY2d 584, 591-592; Goldberg v Lumber Mut. Cas. Ins. Co., 297 NY 148, 153-154).
Americana’s complaint against Sturges does state that its ski bindings were "damaged” as a result of the defective runaway straps. Americana probably did not mean damage or harm in the course of active, sporting use. In those few instances, where the mesh straps actually snapped on the ski slopes, the steel bindings would not have been harmed unless the "runaway” skis suffered extraordinarily destructive collisions, an unlikely event. Rather, the thrust of Americana’s allegation is that the Sturges strap, as a defective component of its binding, diminished the value of, and caused consequential harm to, the unit as a whole.
When one product is integrated into a larger entity, and the *73 component product proves defective, the harm is considered harm to the entity to the extent that the market value of the entity is reduced in excess of the value of the defective component (see Goodyear Rubber & Supply Co. v Great Amer. Ins. Co., 471 F2d 1343, 1344, and cases cited). In other words, if as a result of defective straps, the value of the bindings were reduced beyond the cost of the strap replacements, then that differential was harm not to the straps but to the bindings themselves; a damage not excluded under clause "L”.
Although argument is made that the straps were never integrated components of the bindings, but mere attachments which could be cut away and replaced, the pleadings and bill of particulars do not preclude a contrary finding.
Concededly, the "component role” of the straps was not comparable to that of contaminated noodles in canned soups (see Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co., 34 NY2d 356). In that recent case, of course, there was so serious a defect in so integrated a component that the larger entity, the soup, was destroyed. Yet not precluded in the Americana action is a possible finding that the Sturges straps were so integrated with the Americana bindings that the defective straps impaired the bindings.
The Sturges straps were conceived as part of the Americana bindings; the combinations were advertised and sold as single units. As noted earlier, the Sturges straps were ordered by specifications presumably to conform to the bindings. Ski distributors regarded the straps and bindings as a single product. It is alleged that whole bindings were returned. At this stage of the Americana action it is not determinable whether the losses sustained were covered or not under the exclusion. Put . another way, it is not beyond possibility that the ski bindings or their commercial distribution were harmed by the allegedly defective straps, physically or as merchantable goods.
Thus it has not been unequivocally shown that within the pleadings Sturges could not, upon a trial, be found liable for the destruction of any property other than its own. Exclusion clause "L” therefore, does not relieve the insurer of its duty to defend, and perhaps to pay.
The other policy clause upon which the insurer relies, clause "K”, excludes from coverage: "[b]odily injury or property damage resulting from the failure of the named insured’s products or work completed by or for the named insured to *74 perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work”.
Effort to make sense of this clause seems doomed to failure, since the language is self-contradictory. One wonders what, other than "active malfunctioning”, could be "the failure of the * * * products * * * to perform the function or serve the purpose intended”. Perhaps "active malfunctioning” is intended to suggest a distinction between defects that manifest themselves while the product is in use, as compared to latent defects discovered while the product is inactive; for example, the difference between the few runaway straps that break on the ski slopes, and the scores of similar unused straps that testing might now show to be defective.
This, however, is random speculation, since the clause does not make this distinction clear. Again, "active malfunctioning” seems descriptive of all that is excluded from coverage. If underwriters know what this so-called standard form clause means, the average insured probably does not, and this court most certainly does not. It is for this reason, of course, that exclusionary clauses, when doubtful of meaning, are construed in favor of the insured (Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co., 34 NY2d 356, 361, supra; Sincoff v Liberty Mut. Fire Ins. Co., 11 NY2d 386, 390-391). Hence, the insurer cannot rely on exclusionary clause "K” in declining to defend Sturges.
Thus, while Americana’s complaint and bill of particulars might have been more informative, they do not preclude the possibility that the losses sought to be recovered from Sturges would be covered by the policy. The insurer’s duty to defend is, again, not an interminable one, and will end if and when it is shown unequivocally that the damages alleged would not be covered by the policy.
Accordingly, the order of the Appellate Division should be reversed, with costs, and plaintiff granted declaratory judgment in accordance with this opinion.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
*75 Order reversed, etc.