EDWARD F. DeCROSTA, JR., Appellant, v A. REYNOLDS CONSTRUCTION AND SUPPLY CORPORATION, Respondent.

Third Department, December 4, 1975

*Michael LeSawyer* for appellant.

*Poskanzer, Muffson, Hessberg & Blumberg (Nicholas J. Greisler* of counsel), for respondent.

HERLIHY, P. J. In October, 1969 defendant erected an in-ground swimming pool on plaintiff's property. The pool collapsed on March 15, 1973, and on January 7, 1974, plaintiff commenced an action for damages, alleging negligence as well as breach of warranty, express and implied. Defendant's motion for summary judgment was granted on the ground that both causes of action were time-barred. No appeal was taken, wherefore the correctness of that determination is not before this court. In June of 1974, plaintiff commenced the present action setting forth similar facts and alleging that defendant was liable under the theory of strict products liability. Defendant again moved for summary judgment which again was granted, Special Term taking the view that plaintiff was estopped from maintaining the action by the prior judgment and that the action was barred by the applicable Statute of Limitations.

While Special Term did not articulate its reasons for holding plaintiff to be estopped, it appears that it intended to hold that there is no difference in substance between an action based on strict products liability and an action based on breach of warranty. There is language to that effect in some of the cases. In *Mendel v Pittsburgh Plate Glass Co.* (25 NY2d 340, 345), a 4 to 3 majority in the Court of Appeals expressed its belief "that strict liability in tort and implied warranty *in the absence of privity* are merely different ways of describing the very same cause of action." (Emphasis supplied.) Subse-

quently, the Court of Appeals adopted the theory of strict products liability in *Codling v Paglia* (32 NY2d 330), and more recently expounded on the evolution of the doctrine in *Victorson v Bock Laundry Mach. Co.* (37 NY2d 395). In *Victorson,* the opinion for the court denied that *Codling* had created or discovered a new cause of action, but rather characterized that case as having extended a remedy and having "recognized in its modern guise a pre-existing theory of liability which had been evolving and maturing over the years, sometimes having been described by use of the phrase 'breach of implied warranty'." *(Victorson v Bock Laundry Mach. Co., supra,* p 401.)

In the present case, a determination of the motion for summary judgment requires an analysis of the complaint to ascertain whether or not it does state a distinct cause of action known as strict products liability and further a determination of whether or not the appropriate Statute of Limitations would be the three-year period running from the time when injury to the property occurred, as is provided in CPLR 214.

In terms of legal analysis, the two questions raised are actually interdependent because the choice of the Statute of Limitations ordinarily will flow from the legal determination of whether the complaint in the present case states a cause of action in contract (warranties) or tort (strict products liability). Nevertheless, in the recent *Victorson* case the court after concluding that the cause of action was founded in tort went on to consider what would be an appropriate period of limitation.

It appears established that a contractor who undertakes to construct additions to real property may be considered a manufacturer for purposes of strict products liability. (See *Inman v Binghamton Housing Auth.,* 3 NY2d 137.) Accordingly, the defendant herein would fall within the class of people who may be held responsible upon a theory of strict products liability. In the recent *Victorson* case, the court used language which indicates that a customer might have a direct cause of action based upon strict products liability separate and distinct from the contract where he suffers personal injury or property damage as a result of defective goods purchased by him *(Victorson v Bock Laundry Mach. Co., supra,* pp 400–401). There is nothing therein, however, which

indicates that such a cause of action must necessarily exist in favor of the purchaser against the seller when the facts pleaded actually establish a cause of action which is classically that accruing to the parties to a commercial contract, which the Legislature of this State has already established as a matter of public policy is to be governed by the Uniform Commercial Code. Recently this court held that as to a manufacturer the concept of strict products liability gives rise to a warranty of indemnification, running in favor of immediate or intermediate purchasers as to injuries sustained by third parties, which is not limited to a period of limitations commencing to run at the time the contract was entered into or the goods were delivered *(Infante v Montgomery Ward & Co.,* 49 AD2d 72). While the present complaint refers to hidden and unknown defects which arose in the construction of the swimming pool, it presents no factual allegations other than those which would constitute a cause of action based upon contract or common-law negligence as between this defendant and the plaintiff.

While it is true that many people in a given factual situation might have causes of action based upon breach of warranty, negligence and strict products liability, this does not necessarily mean that all these causes of action would exist at the same time in the same person as against a manufacturer.

In the *Victorson* case the court noted that it "appears that these two fields [contract—tort] have not been so categorically discrete as we are sometimes inclined to suppose." *(Victorson v Bock Laundry Mach. Co., supra,* p 402.) In the recent case of *Velez v Craine & Clark Lbr. Corp.* (33 NY2d 117, 124–125) the court indicated that although strict products liability is considered a tortious cause of action, contract provisions might nevertheless restrict liability *as between the parties to the contract.* Notably, the majority opinion in the *Victorson* case emphasized throughout that in considering the elements of a cause of action in strict products liability and determining the applicable period of limitations, it was considering only the aspects of a claim made by a party not having contractual privity with the defendant. (See *Victorson v Bock Laundry Mach. Co., supra,* pp 401, 403; cf. concurring opinion per Judge FUCHSBERG, p 404 *et seq.)* As noted hereinabove, this court has already taken the position in the *Infante* case that strict products liability may give rise to a cause of action for indemnification, which arises out of the relationship between

the parties but not necessarily by virtue of the fact that there was a contract between them.

The record in the present case contains a contract which has therein express restrictions of liability as between the plaintiff and the defendant (cf. *Velez v Craine & Clark Lbr. Corp., supra)* and the record is sufficient to demonstrate that the plaintiff might have had a possible claim in strict products liability against the apparent prefabricator of the pool, Pacific Palm Pools.

The fundamental problem is that as yet there has been no definitive pronouncement concerning the availability of strict products liability when suit is brought against a manufacturer with whom the plaintiff customer has personally dealt. The public policy which requires the imposition of liability upon a manufacturer as to hidden or latent defects which cause personal injury or property damage to persons not in privity to the contract between itself and its immediate customers (see, e.g., *Codling v Paglia,* 32 NY2d 330, 338–341, *supra)* does not as a matter of necessity or necessary implication lend itself to the protection of immediate customers.

While it is certainly true that an immediate purchaser from a manufacturer will ordinarily not have the means or capability of assuring himself that there are no latent defects, such a purchaser is necessarily able to protect himself or herself through the terms of the contract and, as a matter of public policy, is given the advantage of implied warranties pursuant to the Uniform Commercial Code. As to negligence, the immediate purchaser again is protected against personal injury and property damage for a period of three years running from the time of injury and which statutory period is the same as that which applies to the theory of strict products liability.

To find in favor of the plaintiff requires a determination by this court that as a matter of law a manufacturer guarantees forever to his immediate purchaser that the product is free from latent or hidden defects. Nevertheless, it is common knowledge that anything constructed by human beings is not perfect, and of all the possible persons having a cause of action for strict product liability the immediate purchaser is at all times in a position to exact whatever warranty he desires. While such an indefinite guarantee is both desirable and necessary insofar as indemnity claims might be concerned (cf. *Infante v Montgomery Ward & Co.,* 49 AD2d 72, *supra),* there is no apparent rational basis for holding that strict

products liability in tort is a distinct cause of action from the contract as between the immediate purchaser and the manufacturer for the former's property damage resulting from hidden or latent defects.

For the foregoing reasons the plaintiff has not established a cause of action based upon strict products liability as against this defendant and the order appealed from should be affirmed, with costs.

The order should be affirmed, with costs.

GREENBLOTT, J. (dissenting). In an earlier day, the law bestowed its protection in certain classes of cases only upon those in contractual privity with an alleged tort-feasor. By its decision today, the majority has brought us to an opposite extreme so as to bestow the benefit of a strict products liability only upon those out of privity. While we agree that there exists a cause of action based on strict products liability separate and distinct from actions founded on warranty or contract, we do not believe that the doctrine of strict liability was intended to be developed subject to the restrictions espoused by the majority.

The majority begins by acknowledging that the language of the *Victorson* case "indicates that a customer might have a direct cause of action based upon strict products liability *separate and distinct* from the contract" (emphasis supplied). Yet the majority next suggests there is nothing to indicate that "such a cause of action must necessarily exist" when the complaint alleges facts which make out a "classical" cause of action for negligence or for breach of contractual warranty under the Uniform Commercial Code. Thus, in the same paragraph the majority has recognized the distinction between different causes of action but has refused to permit that distinction to have an operative effect.

This conclusion appears to be regarded as justifiable since "the immediate purchaser is at all times in a position to exact whatever warranty he desires." Such an attitude, we respectfully submit, refuses to recognize the realities of commercial dealing between manufacturers or merchants on the one hand, and individual consumers on the other, who in actuality are not on a sufficiently equal footing to permit the latter to negotiate contractual protections. It is indeed noteworthy that the law itself recognizes this situation, for otherwise what explanation can there be for the requirement under the

Uniform Commercial Code that all sales contracts include certain warranties for the protection of the buyer? If the law sees fit to grant certain protections by warranty notwithstanding that a party in privity could conceivably negotiate such protections for himself, what basis exists for concluding that the law refuses to afford the protection of strict products liability to that person where it is equally likely (or unlikely) that he could have negotiated that for himself as well? In our view, there is no basis for such a conclusion.

An examination of the evolution of the doctrine of strict products liability is appropriate at this point. While the majority of the Court of Appeals in the *Mendel* case expressed its belief "that strict liability in tort and implied warranty in the absence of privity are merely different ways of describing the very same cause of action" *(Mendel v Pittsburgh Plate Glass Co.,* 25 NY2d 340, 345), the effect of *Mendel* was to deny to those out of contractual privity with a defendant a greater *remedy* than was available to those in privity. In merely refusing to apply to causes of action by persons out of privity a different Statute of Limitations than that applicable to warranties created by contract (including warranties mandated by the provisions of the Uniform Commercial Code), the court did not deny the existence of a cause of action based on a promise, implied in law, that a product was free of defects, which would extend to persons in as well as out of privity. That *Mendel* dealt only with the applicability of Statutes of Limitation, and not with the existence of causes of action, is clear from the holding in *Victorson* overruling *Mendel* on that very point.

While the opinion in *Mendel* spoke of elimination of the privity requirement, it was not until *Codling v Paglia* (32 NY2d 330) that it was expressly held that the existence of an injury-causing defect could by itself be a basis for liability without the necessity of couching responsibility in terms of breach of warranties, express or implied, of fitness for a particular purpose or the like. It was obviously with this distinction in mind that the *Victorson* court declared that claims based on the theory of strict liability "should not be understood as in any way referring to the liability of a manufacturer of a defective product under familiar but different doctrines of the law of contracts * * * [to] a *customer* or other person *with whom* or for whose benefit the manufacturer previously has made a warranty * * * express or im-

plied. * * * [A] particular plaintiff [may] base his case on contract liability or negligence or strict products liability" *(Victorson v Bock Laundry Mach. Co., supra,* p 400; emphasis supplied). Most significantly, the court later describes the cause of action as being " 'something separate and distinct which sounds in tort exclusively, and not at all in contract; *which exists apart from any contract between the parties;* and which makes for strict liability in tort' " *(Victorson v Bock Laundry Mach. Co., supra,* p 402; emphasis supplied). In our view, the conclusion is inescapable that if a strict products liability action "exists apart from any contract between the parties", that cause of action must exist notwithstanding any contract between the parties.

The most compelling point of all, which the majority ignores, relates to a point which the majority itself makes. In *Velez v Craine & Clark Lbr. Corp.* (33 NY2d 117, 124–125), it was indicated that strict products liability could be limited by contractual provision *as between parties* to the contract. In our opinion, it unavoidably follows that there would be no reason to hold strict liability subject to contract limitation if that cause of action did not exist in the first instance in favor of a party in contractual privity.

Having concluded that strict products liability is available to the present plaintiff, we take this opportunity to comment upon other contentions raised by the defense.

The contention that plaintiff was collaterally estopped by the prior judgments can be disposed of without extended discussion. The first cause was not determined on the merits, as a result of which there was no determination of plaintiff's rights. He was simply barred, rightly or wrongly, from pursuing a particular remedy. He should no more be barred now from pursuing the proper remedy, if it is timely, than if the first action had never been brought. This brings us to a consideration of whether the remedy now sought is in fact timely, and again, a lengthy discussion need not be had. The essential holding of *Victorson,* cast in terms leaving no room for doubt, is that the period of limitations in cases of this sort is three years, as established for claims for personal injury and property damage in CPLR 214, and does not begin to run until the date of injury. Here, the injury took the form of alleged property damage to plaintiff's land which occurred when the pool collapsed in March of 1973. It is, therefore, obvious that

the present action was timely when commenced in June of 1974.

The defendant appears to have anticipated these conclusions and seeks to avoid their consequences by arguing that plaintiff seeks to recover damages only to the product itself, and, therefore, has not pleaded the fundamental elements of an action for strict products liability. We agree that damage only to the product itself is not actionable under strict liability theory, and we have previously so indicated where the question was presented in a different context (see *Advanced Refrigeration & Appliance Co. v Insurance Co. of North Amer.*, 42 AD2d 484; *Sturges Mfg. Co. v Utica Mut. Ins. Co.*, 45 AD2d 52, revd. on other grounds 37 NY2d 69). We do not agree, however, with defendant's reading of the present plaintiff's complaint. The ninth paragraph of the complaint alleges that the pool "collapsed and caved in causing considerable damage to plaintiff's property thereby decreasing the value of said lot and premises". The bill of particulars which had been served by plaintiff in his prior causes of action set forth loss of value in the amount of $5,000, $2,385.81 as the cost of repairs, and $1,500 for restorative landscaping. While this bill has no official status in the present action, there is no reason not to assume that similar elements of damage are claimed in the present case. So much of the above as represents the value of the pool as well as the cost of repairing the pool should not be recoverable, for that constitutes damage to the product itself which is not actionable, as we have noted, under strict products liability theory. However, insofar as plaintiff's complaint alleges damages due to actual physical injury to his land, he has clearly made out a claim cognizable under the strict products liability doctrine.

The order should be reversed.

SWEENEY and KOREMAN, JJ., concur with HERLIHY, P. J.; GREENBLOTT and REYNOLDS, JJ., dissent and vote to reverse in an opinion by GREENBLOTT, J.

Order affirmed, with costs.