SHARON M. TOKER, Respondent, v THE HARTFORD, Appellant.

First Department, December 20, 1977

**APPEARANCES OF COUNSEL**

*William F. Larkin* of counsel *(Nicholas D'Onofrio,* attorney), for appellant.

*Alfred Toker* of counsel *(H. Leonard Toker* with him on the brief; *Darrell Buchbinder,* attorney), for respondent.

### OPINION OF THE COURT

SILVERMAN, J.

Defendant, The Hartford, appeals from a judgment of the Supreme Court granting plaintiff summary judgment declaring that defendant Hartford is obligated to defend on behalf of plaintiff, Sharon M. Toker, and to pay any judgments that may be granted against Toker up to the limits of the Hartford policy with Empire Volkswagen, Inc. ("Empire"), a named insured.

Plaintiff Sharon M. Toker purchased an automobile from Empire Volkswagen, an automobile dealer, and took at least physical possession thereof on December 16, 1975. She alleged that as she did not have her insurance arranged for yet, Empire's representative permitted her to keep the dealer's plates on the car, and assured her that she would thus be covered by Empire's liablility insurance. On December 19, 1975, plaintiff telephoned Empire that she now had the necessary F-S insurance form but, that being a Friday, she was requested to come in on Monday, December 22, 1975. On Monday December 22, she and the automobile were involved in an accident in which there were one death and serious injuries. Sued for damages for wrongful death and personal injuries, she called on defendant Hartford, Empire's insurer, to defend. Hartford disclaimed on the ground that the policy only covered automobiles owned by Empire and that this automobile was not owned by Empire at the time of the accident. Plaintiff Toker thereupon brought this action for declaratory judgment to require Empire to defend the wrongful death and personal injuries action, and to pay any judgment that might be rendered against her in said actions.

Section 416 of the Vehicle and Traffic Law provides: "Upon the sale * * * of a motor vehicle * * * the vendee * * * shall be allowed to operate the same upon the public highways for the period of five days after taking possession thereof, without carrying number plates issued upon a registration * * * provided the motor vehicle * * * shall have attached thereto and displayed thereon, in the manner therein provided, a set of dealer's or transporter's number plates issued to the vendor * * * under section four hundred fifteen, and if a proper application for registration and number plates for such vehi-

cle, under the provisions of section four hundred one or four hundred ten, as the case may be, shall have been mailed or presented to the commissioner, or agent, accompanied with the payment of the required fee within twenty-four hours after he has taken possession thereof."

■ ■ We think there was no violation of the five-day provision. December 21 being a Sunday, the five-day period permitted by section 416 of the Vehicle and Traffic Law for use of dealer's plates was extended to Monday, December 22. (General Construction Law, § 25-a).

Apparently the provision requiring the vendee to make proper application for registration within 24 hours after taking possession was not complied with.

But failure by the vendee to comply with this provision does not relieve the insurance company of liability. In *Switzer v Merchants Mut. Cas. Co.* (2 NY2d 575, 581), the Court of Appeals held that failure by the dealer, and apparently by the vendee (p 578), to comply with this section did not relieve the insurer of its responsibility. The court pointed out (p 581): "Indeed, in countless cases the liability of an insured arises out of some illegal act, notwithstanding which the insurer nevertheless gives protection under its policy."

Furthermore, in the *Switzer* case *(supra),* there was involved a policy of insurance very like the present one, a garage liability policy insuring against various hazards, including the ownership or use of the premises for the purpose of an automobile dealer and all operations necessary or incidental thereto. The named insured, there as here, was an automobile dealer. The dealer plates were left on the car; the accident happened within the five-day period. However, as here, the buyer did not file his application for registration in the time specified, nor did the dealer timely comply with a requirement which the statute then contained for mailing a copy of the certificate of sale to the Bureau of Motor Vehicles. In an action by the injured party, the court held that the dealer's insurance company was liable on the policy, basing the decision not on any theory of estoppel but on the theory that the vendee was an insured under the policy and the use by the vendee of the policy "was both within the hazards covered by the policy and with the permission of the named insured" (p 581).

In the present case, as in *Switzer,* the policy is a "garage liability policy." It insures against various hazards, including

the "ownership, maintenance or use * * * of any *automobile* for the purposes of *garage operations.*" It defines garage as meaning, among other things, *"automobile* sales agency"; and it defines garage operations to mean "for the purposes of a *garage* and all operations necessary or incidental thereto." On these facts alone, the *Switzer* case would be controlling in plaintiff's favor. And so the Special Term has held.

However, in *Phoenix Ins. Co. v Guthiel* (2 NY2d 584, 587-588), decided the same day as the *Switzer* case, the Court of Appeals refused to grant a declaratory judgment against the insurer in favor of the seller and buyer of an automobile who were defendants in a personal injury action. That case involved not a garage liability policy issued to an automobile dealer but an ordinary automobile liability policy where the seller apparently was not a dealer and there were no dealer plates, so that the failure of the seller to remove the seller's plates was a violation of law *ab initio.* In the *Phoenix Ins.* case (*supra,* p 588) the court said: "The only case where the insurer was required to defend and indemnify the vendor and the vendee who used the vendor's registration plates on the purchased vehicle was not decided on the basis of public policy. *(Switzer v. Merchants Mut. Cas. Co.* 2 N Y 2d 575, decided herewith.)* In that case the insurance policy coverage did protect the vendor and vendee under the circumstances presented. Hence, where, as in the case at bar, the claim is asserted under a contract, the rule dictated by public policy in a tort case may not be extended to embrace a controversy contractual in nature. This controversy presents solely the interpretation of a contract executed between the insured and the insurer."

We come then to the question whether the policy involved in this case contained limitations not present, or at least not referred to in the *Switzer* case, that exclude coverage where the automobile is no longer owned by the dealer. The body of the policy does contain such a limitation. The policy contains an express clause excluding from the definition of "insured"

"(iii) any person or organization, other than the *named insured,* with respect to any *automobile*

"(a) owned by such person or organization or by a member (other than the *named insured)* of the same household, or

"(b) possession of which has been transferred to another by the *named insured* pursuant to an agreement of sale."

*Rudes v Hartford Acc. & Ind. Co.* (32 AD2d 575) involved

the use of dealer plates by a purchaser of a car from a dealer. In the *Rudes* case, as in this, the policy contained a clause excluding from the definition of "insured" any person other than the named insured with respect to any automobile, possession of which has been transferred to another by the named insured pursuant to an agreement of sale. The *Rudes* case held that the vendee and the person operating the car with the vendee's consent were not insured under the policy and were not entitled to compel the insurance company to defend and indemnify the operator.

But in the present case we have an additional clause, or rather an additional rider, not present or at least not referred to, in the *Rudes* case; there is a "Dealer Plates-Non-Dealer Garages" indorsement which provides in relevant part that: "[S]uch insurance as is afforded by the policy with respect to *owned automobiles* applies to any *automobile* owned by the *named insured* but only while operated with dealer plates described in this endorsement". Defendant Hartford says that this indorsement does not cover the present case for the reason that the coverage is still limited to automobiles owned by the named insured, the dealer, and that this automobile was no longer owned by the dealer.

We do not agree. In our view, this case is more analogous to the *Switzer* case than the *Rudes* case, for these reasons:

As the Court of Appeals recognized in the *Switzer* case (p 579): "It is common practice for automobile dealers to give permission to purchasers of their cars to use temporarily their dealers' license plates." Here, as in *Switzer,* it would not have been possible for the buyer to have driven the car lawfully without dealer plates as it was not practical for the buyer to obtain an owner's license forthwith. The permission granted to the buyer was as a service to the buyer, the dealer's customer.

The public policy of this State is of course that all automobiles should be covered by liability insurance.

If, as Hartford contends, the dealer plate indorsement in this case, for which an additional premium was paid, does not cover cars during the period after the sale and while they are carrying plates, but only while the car is still owned by the dealer, we are at a loss to understand what additional protection the dealer plate indorsement extends, or why an additional premium should be charged for it. If read literally, why is it necessary to have a provision that insurance afforded

with respect to owned automobiles applies to any automobile owned by the named insured but only while operated with dealer plates? Nothing in the policy excluded owned automobiles while operated with dealer plates; so what does the indorsement add?

Hartford suggests that the policy without the dealer plate indorsement would only cover accidents on the garage premises and that this indorsement extends the policy to cover accidents not on or adjacent to the garage premises, provided the car carries dealer plates. True the policy does define garage operations as meaning the "ownership, maintenance or use of the premises" and defines "premises" as the premises where the named insured conducts garage operations. But the policy in the *Switzer* case has substantially the same clause, referring to the ownership or use of "premises" (p 579). Nothing in the dealer plate indorsement in any way refers to geographical limitation of the place of the accident. The language seems peculiarly inappropriate if its purpose is to remove that limitation. Dealer plates like other plates relate to ownership of an automoble. A "dealer plate" indorsement ought to have something to do with extending liability with respect to ownership, or indicia of ownership.

■ In view of the common practice of permitting buyers to drive a car with dealer plates for a few days, and the common understanding that during that period the buyer is covered by the dealer's insurance, we think that the more natural meaning of the dealer plate indorsement is that it applies, during the period that the dealer plates are on the car, to cars owned by the dealer and sold by the dealer.

■ Finally we note that any ambiguity must be resolved against the insurance company. The Court of Appeals said in *Sturges Co. v Utica Mut. Ins. Co.* (37 NY2d 69, 74): "If underwriters know what this so-called standard form clause means, the average insured probably does not, and this court most certainly does not. It is for this reason, of course, that exclusionary clauses, when doubtful of meaning, are construed in favor of the insured." The present policy with its indorsements covers 19 pages in the record, much of which is in very small type. There are references and cross-references; words are defined in terms of other definitions which in turn refer back to still other definitions. There are portions of the policy which apply to this dealer and whole portions which have nothing to do with this dealer, or the risk insured against.

This court, composed of experienced lawyers and Judges, aided by counsel, has had the greatest difficulty in understanding the policy. We have had to call for supplemental briefs and explanations of the bearing of clauses which had apparently escaped counsel's attention. Insurance companies that write policies that are so difficult to understand cannot escape liability by refined arguments as to the meaning of one or another clause. The average insured would suppose the dealer plate indorsement insures while the car bears a dealer plate. If it does not, the indorsement should very plainly say so in language and typeface that the layman would be likely to notice and understand.

■ While there may be some question as to the exact conversation between plaintiff and the dealer's salesman, it appears undisputed that plaintiff obtained possession of the car not earlier than December 16; that the car had the dealer's plates on it with the dealer's permission; and that the accident happened on Monday, December 22, while the dealer plates were on the car. There is thus no material issue of fact requiring a trial and plaintiff was properly granted summary judgment in her favor.

The judgment of the Supreme Court, New York County (ASCH, J.), entered June 3, 1977, declaring that defendant is obligated to defend certain actions on behalf of plaintiff Sharon M. Toker and to pay any judgments that may be granted up to the policy limits against plaintiff Toker therein, and granting plaintiff summary judgment to that effect, and denying defendant's cross motion for summary judgment, should be affirmed, with costs.

KUPFERMAN, J. P., MARKEWICH and YESAWICH, JJ., concur.

Judgment, Supreme Court, New York County, entered on June 3, 1977, unanimously affirmed. Respondent shall recover of appellant $60 costs and disbursements of this appeal.