LOWENSTEIN DYES & COSMETICS, INC., Plaintiff,

v.

AETNA LIFE AND CASUALTY COMPANY and the Aetna Casualty and Surety Company, Defendants.

No. 81 C 2455.

United States District Court, E. D. New York.

Oct. 15, 1981.

Greenfield Eisenberg Stein & Senior, New York City by Norman A. Senior, Deborah A. Porder, New York City, for plaintiff.

Seaman, Williamson, Gorayeb & Tidd, New York City by Joseph G. Gorayeb, Peter W. Williamson, New York City, for defendants.

### MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff ("Lowenstein"), a New York citizen, commenced this declaratory judgment action against defendant insurers ("Aetna"), citizens of Connecticut, for a determination of the parties' rights and obligations under a policy of comprehensive general liability insurance. A manufacturer of hair dyes and other products, Lowenstein is defendant in an action commenced in the United States District Court for the Eastern District of Missouri by one of its customers, Hall Angel Co. In accordance with its interpretation of the policy, Lowenstein seeks a summary judgment declaring that Aetna is obligated to pay for its defense in the Missouri action. Aetna contends that the basis for Lowenstein's liability in the Missouri lawsuit is excluded from its contractual obligation to defend, and argues further that the claims in that action did not trigger its obligation to defend. For the reasons that follow, summary judgment is granted to plaintiff on its first cause of action declaring that Aetna is obligated to pay for Lowenstein's defense.

The policy at issue provided in pertinent part that Aetna

"will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

bodily injury or

property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent."

In a section of "General Provisions" the policy defined "bodily injury" as "bodily injury, sickness, or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." "Property damage" was defined as

"(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."

"Occurrence" was defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

Angel Hall commenced the Missouri action on May 7, 1980. In June 1980 Lowenstein sent notification and a copy of the complaint which Aetna received on June 25, 1980. By letter dated July 7, 1980, Aetna informed Lowenstein it was reserving the right to disclaim coverage on the ground that notice was not given as soon as practicable and would investigate the applicability of the following exclusion from the comprehensive general liability policy:

"This insurance does not apply:

\*     \*     \*     \*     \*     \*

"(k) to bodily injury or property damage resulting from the failure of the named insured's products . . . to perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products . . . ." [1]

Subsequently, on November 24, 1980, by a letter from its Liability Claim Department Superintendent, Aetna disclaimed coverage for the Missouri suit on the basis of exclusion (k). It adhered to this position after plaintiff forwarded a copy of Angel Hall's first and second amended complaints.

■ Both parties recognize that under New York law an insurer's obligation to defend is broader than its obligation to indemnify. See *Monari v. Surfside Boat Club, Inc.*, 469 F.2d 9, 13 (2d Cir. 1972), citing *Goldberg v. Lumber Mutual Casualty Insurance Co.*, 297 N.Y. 148, 77 N.E.2d 131 (1948); *International Paper Co. v. Continental Casualty Co.*, 35 N.Y.2d 322, 326–27,

361 N.Y.S.2d 873, 876–77, 320 N.E.2d 619, 621–22 (1974). Whether the insurer has a duty to defend depends in the first instance on whether

"the pleadings in the action against the insured can be construed so as to encompass the risk undertaken by the insurer no matter how groundless, false or fraudulent they may turn out to be. . . . If the insurer is to be relieved of its duty to defend, it must show that the allegations rest solely and entirely within the exclusions of the policy and that the allegations are subject to no other interpretation."

*United States Fidelity & Guaranty Co. v. Copfer*, 63 A.D.2d 847, 406 N.Y.S.2d 201, 203 (4th Dep't 1978). *Cf. Hartford Insurance Co. v. Maryland Ins. Co.*, 70 A.D.2d 929, 417 N.Y.S.2d 751, 752 (2d Dep't 1979) (no obligation to defend where there is "no factual basis or legal theory which may be developed at trial arising out of the incident that would obligate the insurer to pay"). Moreover,

"where a complaint . . . contains ambiguous or incomplete allegations and does not state facts sufficient to bring a case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint . . . within the coverage of the policy."

*Commercial Pipe and Supply Corp. v. Allstate Ins. Co.*, 36 A.D.2d 412, 321 N.Y.S.2d 219, 221 (4th Dep't 1971), *aff'd*, 30 N.Y.2d 619, 331 N.Y.S.2d 42, 282 N.E.2d 128 (1972).

With these principles in mind we turn to the second amended complaint in the Missouri action. This alleged that the powdered hair colors Hall Angel purchased from Lowenstein and distributed were "defective, unfit, unmerchantable and worthless" in that they caused the hair of the ultimate users "to turn to unwanted and unsightly colors," and did not conform to the sample Lowenstein had provided. An-

---

**1.** The letters sent to Lowenstein mistakenly referred to "the act of malfunctioning of such products."

gel Hall also claimed it had "in no way altered" the goods before they were used.

As damages Angel Hall sought $1,200,000 itemized as follows: $100,198 in revenue lost due to returns of the defective and other hair dyes from its customers; $44,000 expended on a packing machine for the hair powders, allegedly rendered useless by the unsaleability of the goods; $21,617 in hiring extra personnel to mollify irate customers and distributors; $39,986 in hiring beauty operators to rectify the situation with consumers; $67,780 worth of time Angel Hall's president devoted to the problem, and $81,680 in travel expenses for their personnel; $27,000 spent in renting space to receive and distribute the hair powder; $75,523 in interest paid on a $220,000 Small Business Administration loan Angel Hall obtained to institute and promote the sale of the hair powder; $17,445 in shipping costs related to the return and replacement of the dyes; $57,235 in advertising expenses; $8,200 in legal expenses incurred in the promotion of the product and defending legal action "resulting therefrom;" $39,273 spent in purchasing liability insurance covering the hair powders, rendered useless because the covered goods are unsaleable; and $650,000 in lost profits.

■ Even given the generous reading to which Lowenstein is entitled under New York law, the Angel Hall complaint cannot be construed to make claim for property damage and obligate Aetna to defend the Missouri action. In essence Angel Hall seeks to recover numerous types of consequential damages it alleges resulted from Lowenstein's sale of a defective product or breach of warranty. Lowenstein does not dispute that the Aetna liability policy excluded coverage for "property damage to the named insured's products arising out of such products" (exclusion (L)). Further, while the New York cases have recognized that property damage requiring an insurer to defend occurs where the insured's prod-

uct is integrated into another product, proves defective and consequently diminishes the completed product's market value, e. g., *Sturges Mfg. Co. v. Utica Mutual Ins. Co.*, 37 N.Y.2d 69, 371 N.Y.S.2d 444, 447 (1975), Angel Hall's claims do not come within this rule.[2]

In fact, the only item which might be considered "property" that was damaged by Lowenstein's dyes is Angel Hall's anticipated profits. Business losses, however, are not "property" covered by Lowenstein's policy, which only insured against injury to or loss of use of another's "tangible property." See *Liberty Mutual Ins. Co. v. Consolidated Milk Producers Association*, 354 F.Supp. 879, 882–84 (D.N.H.1973); *Geddes and Smith, Inc. v. St. Paul Mercury Indemnity Co.*, 51 Cal.2d 558, 334 P.2d 881 (1959); *County of Monroe v. Travelers Ins. Cos.*, 100 Misc.2d 417, 419 N.Y.S.2d 410 (Monroe Co. 1979).

Nothing directly to the contrary is contained in *C. W. Davis Supply Co. v. Newark Insurance Co.*, 60 Misc.2d 946, 304 N.Y.S.2d 124 (Onondaga Co. 1969), relied on by Lowenstein. There the insured, Davis, was sued by Northeastern, the general contractor responsible for constructing a water pollution plant for the city. Northeastern claimed as damages its financial losses in repairing roof beams allegedly damaged by Davis's employees. Unlike the underlying action against the insured in *County of Monroe v. Travelers Ins.*, supra, the allegations in Northeastern's complaint against Davis established a direct causal link between damage to tangible property (the roof beams) that the insured was alleged to have caused, and the plaintiff's financial losses for which recovery was sought. In the present case, the Angel Hall complaint seeks damages relating to no tangible property except the hair powder, and that is excluded from coverage.

Nevertheless, the *Davis* case, and *Penn Aluminum Inc. v. Aetna Casualty & Surety*

2. We find no merit in Lowenstein's contention that because the dyes were mixed with water to form a paste for application, they became "property" of the purchasers which was dam-

aged. The mixture was merely a preparation for use and did not involve the integration into a new entity referred to in the *Sturges* case.

*Co.*, 61 A.D.2d 1119, 402 N.Y.S.2d 877 (4th Dep't 1978), do support plaintiff's basic contention that "an insurer is obligated to defend, even where the property damage or bodily injury is not suffered by the plaintiff suing the insured" (Reply Br. at 7). In *Davis*, the evident causal relationship between the damage to tangible property and the claimed financial loss was held sufficient to require the insurer to defend under its policy providing for defense of "any suit alleging such . . . property damage and seeking damages . . . ."

In *Penn Aluminum*, Aetna was held obligated to defend a third party action for indemnification brought by Sears, which had been sued on negligence and breach of warranty theories for $630 in damages caused to the plaintiff's residence and the awning purchased from Sears and made by Penn Aluminum. Apparently without questioning that Sears' third-party claim for indemnity against the manufacturer was covered by the Aetna policy, the court explained that because "the damages alleged [referring to the main complaint] are not unequivocally excluded from coverage by the terms of the policy, . . . Aetna must perform its contractual duty to defend." 402 N.Y.S.2d at 879.

■ While *Davis* and *Penn Aluminum* both involved underlying claims of damage to tangible property, it makes no difference under the terms of the policy in this case that the basis on which Aetna may be held to defend Lowenstein—Angel Hall's demand for $39,986 it spent to hire beauty operators to restore the mis-colored hair of those who used the Lowenstein dyes Angel Hall distributed—would be considered special damages in a consumer's suit for "bodily injury" against Angel Hall or Lowenstein. The Aetna policy at issue here required only that the claim for damages be "on account of . . . bodily injury" caused by an occurrence involving the insured's products, in order for the duty to defend to attach. These conditions appear to have been met.

■ By itself the phrase "on account of" expresses only a causal relationship, without requiring that the plaintiff suing an insured by the party that has sustained the actual physical injury or property damage. As the Second Circuit has recently emphasized,

"an ambiguous provision in an insurance policy is construed 'most favorably to the insured and most strictly against the insurer.' *Index Fund, Inc. v. Insurance Company of North America*, 580 F.2d 1158, 1162 (2d Cir. 1978), *cert. denied*, 440 U.S. 912, 99 S.Ct. 1226, 59 L.Ed.2d 461 (1979). The insurer bears a heavy burden of proof, for it must ' "establish that the words and expressions used [in the insurance policy] *not only are susceptible of the construction sought by [the insurer] but that it is the only construction which may fairly be placed on them.*" ' *Filor, Bullard & Smyth v. Insurance Co. of North America*, 605 F.2d 598, 602 (2d Cir. 1978), *cert. denied*, 440 U.S. 962, 99 S.Ct. 1506, 59 L.Ed.2d 776 (1979) (quoting *Lachs v. Fidelity & Casualty Co. of New York*, 306 N.Y. 357, 365–66, 118 N.E.2d 555, 559 (1954))." *Vargas v. Insurance Company of North America*, 651 F.2d 838, 839–40 (2d Cir. 1981) (emphasis in original).

While a contractual undertaking to defend must be construed in light of the parties' "dominant purpose" in obtaining the insurance policy, *cf. Treadwell Co. v. U. S. Fidelity & Guaranty Co.*, 275 N.Y. 158, 9 N.E.2d 818 (1937) (because policy indicated purpose was to protect employer against liability to employees as such, obligation to defend did not extend to worksite owner's suit to recover from employer amounts owner had paid in employee's personal injury suit), Aetna has pointed to nothing in its policy that suggests the insurance was not intended to cover damage claims such as Angel Hall's expense in remedying bodily injury however they may arise.

In essence, the relation among Angel Hall, Lowenstein and the users of the dyes makes the present case no different from the indemnitor-indemnitee situation in *Penn Aluminum, supra*. There it was clear that if the insured had been sued directly

the insurer would have been obligated to defend. The circumstance that another has satisfied or incurred the damage claim voluntarily, forestalling litigation, does not, we think, remove the claim from the compass of the policy. On the contrary, the kind of damage which underlies this aspect of Angel Hall's claim is at the core of the comprehensive general liability policy.

As to Aetna's claim that exclusion (k) absolves it of any duty to defend, it is sufficient to note that in *Sturges Mfg. Co., supra,* the New York Court of Appeals considered the identical clause and concluded that "[e]ffort to make sense of [it]," in particular the scope of its exclusion from the exclusion, "seems doomed to failure, since the language is self contradictory." 37 N.Y.2d at 74, 371 N.Y.S.2d at 448. Resolving doubts as to its meaning in favor of the insured, the court ruled that the insurer *could not rely on exclusion (k) in declining to defend.*[3]

Besides a declaration that Aetna is obligated to defend, Lowenstein asks that choice of counsel be left to it, with Aetna to bear the cost. It argues that because it may be determined in the Angel Hall action that exclusion (k) applies, a conflict of interest arises from Aetna's obvious incentive to contest the "covered" theories of liability more vigorously than the non-covered theories, such as those suggested in exclusion (k). Since it appears that such a conflict may exist, it is appropriate for Aetna to bear the reasonable cost of counsel of plaintiff's choosing. See, *e. g., Penn Aluminum Inc. v. Aetna Casualty & Surety Co., supra; Utica Mutual Ins. Co. v. Cherry,* 45 A.D.2d 350, 358 N.Y.S.2d 519 (2d Dep't 1974), *aff'd,* 38 N.Y.2d 735, 381 N.Y.S.2d 40, 343 N.E.2d 758 (1975).

Accordingly, summary judgment is granted to plaintiff declaring Aetna to be obligated to pay the reasonable costs of Lowenstein's counsel in defending the Missouri action.

SO ORDERED.

---

**3.** Because we hold that Aetna is obligated to pay for its insured's defense in the Missouri action by the terms of the policy, plaintiff's contention that Aetna's express reliance on exclusion (k) has estopped it from contesting whether the Angel Hall suit involved claims for damages on account of bodily injury or property damage can be disposed of by reference to 2 R. Long, Law of Liability Insurance, § 17.16 at 17–21 (1980): "The doctrines of waiver and

estoppel cannot be invoked to create a primary liability where none exists; they cannot supply coverage where the policy did not." *Brink v. Hanover Fire Ins. Co.,* 80 N.Y. 108 (1880), on which Lowenstein relied is inapposite because it and the cases following it involved the insured's breach of a condition of insurance, typically failure to file timely notice, which the insurer properly could be held to have excused if not asserted.