VILLA CHARLOTTE BRONTE, INC., et al., Appellants, v COMMERCIAL UNION INSURANCE COMPANY, Respondent.

First Department, January 10, 1984

### APPEARANCES OF COUNSEL

*Richard M. Resnik* of counsel (*Mandel & Resnik, P. C.,* attorneys), for appellants.

*Alfred E. Page, Jr.,* of counsel (*Clune, White & Nelson,* attorneys), for respondent.

### OPINION OF THE COURT

BLOOM, J.

Villa Charlotte Bronte, Inc. (Bronte), is a residential cooperative corporation located in Riverdale. Abelman and Lederer are both holders of proprietary leases and during all pertinent periods both were directors of the corporation; Abelman was president and Lederer was vice-president. Commercial Union is an insurance company which insured Bronte under an all-purpose policy. Among the insuring clauses was one which agreed to indemnify Bronte and any

executive officer, director and stockholder "while acting within the scope of his duties as such" for injury to another from the utterance of "libel or slander or of other * * * disparaging material" committed in the course of Bronte's business. Of moment are two other clauses: an obligation to defend and a proviso that coverage was excluded where "the first injurious publication or utterance of the same or similar material *by or on behalf of the named insured* was made prior to the effective date of this insurance" (emphasis supplied). The effective date of the policy was March 1, 1980.

James O'Rourke is an attorney and a partner in the firm of Skadden, Arps, Slate, Meagher and Flom. He is also a proprietary lessee and resident at Bronte. In September, 1978 he brought an action against Bronte to compel it to refrain from dumping raw sewage into the Hudson River. That action culminated in a consent decree in which O'Rourke obtained the result desired by him.

Bronte is a somewhat small co-operative, consisting of 16 apartments and the costs of the litigation placed a serious drain on the co-operative exchequer. By consequence, things happened which led to the underlying action. That action contains four causes, only one of which — the first cause which sounds in defamation — is germane. Bronte turned the complaint over to the Commercial Union which disclaimed liability under it. Bronte and its two senior officers, Abelman and Lederer, then brought this action and moved for partial summary judgment requiring Commercial Union to furnish a defense for them. They acknowledged that the issue of indemnity would have to await the conclusion of the underlying case. Special Term denied partial summary judgment to plaintiffs and they appeal.

The first cause in the underlying action is brought by O'Rourke against Bronte, Abelman and Bruno and Anna Lederer (Bruno's wife, who is not a party to this action) and is bottomed upon five utterances. The first is by Bruno Lederer, an attorney, written on his personal legal stationery. It is dated January 7, 1980 and is addressed to one of O'Rourke's partners at Skadden, Arps. It charges O'Rourke with backdating a notice required by law in the prosecu-

tion of the sewage litigation. The second letter is also on the personal legal stationery of Bruno Lederer and is dated January 28, 1980 and is addressed to O'Rourke's attorney in the sewage litigation. It accuses O'Rourke with shouting obscenities, causing the exterminator to spread toxic substances including cyanide, engaging in reprehensible conduct, etc. The third was a resolution adopted by the board of directors on April 16, 1980 authorizing a demand upon Skadden, Arps for the legal fees (said to exceed $40,000 when coupled with maintenance fees withheld by O'Rourke and at least one other co-operator) engendered by O'Rourke's bad faith and spiteful and harassing sewage litigation. The fourth document is a mailgram sent by a committee of 10 female tenants of the co-operative to another partner of Skadden, Arps asserting that O'Rourke had brought the co-operative to the brink of financial disaster by his multiple unjust litigation made possible only by use of the firm's personnel and facilities (it is worthy of mention that only Anna Lederer of the 10 signatories to the mailgram is a defendant in the underlying suit). The final document is a letter signed by Abelman, as president of Bronte and is dated June 16, 1980. It is on the letterhead of Bronte and was sent pursuant to the board resolution adopted on April 16, 1980, and is directed to Skadden, Arps. It demanded the legal fees expended by Bronte. It repeats the allegation that these legal expenses were engendered by O'Rourke's bad faith and spiteful and harassing sewage litigation and adds the charge that O'Rourke was guilty of placing an obscene, nocturnal phone call and that he seeks only to humiliate the co-operative and to compel it to capitulate to his demands.

It has long been the rule that the duty to defend is broader than the duty to pay. Indeed, even in cases where the policies do not render the allegations by the injured party controlling, it has been said: "The distinction between liability and coverage must be kept in mind. So far as concerns the obligation of the insurer to defend the question is not whether the injured party can maintain a cause of action against the insured but whether he can state facts which bring the injury within the coverage. If he states such facts the policy requires the insurer to defend

irrespective of the insured's ultimate liability." (*Grand Union Co. v General Acc., Fire & Life Assur. Corp.,* 254 App Div 274, 280, affd 279 NY 638, quoted in *Goldberg v Lumber Mut. Cas. Ins. Co.,* 297 NY 148, 154; see, also, *International Paper Co. v Continental Cas. Co.,* 35 NY2d 322; *Sturges Mfg. Co. v Utica Mut. Ins. Co.,* 37 NY2d 69.) In order for an insurer to be relieved of its obligation to defend as distinguished from its duty to indemnify it must demonstrate conclusively that the underlying action falls entirely outside the policy coverage. (*International Paper Co. v Continental Cas. Co.,* 35 NY2d 322, *supra; Sturges Mfg. Co. v Utica Mut. Ins. Co.,* 37 NY2d 69, *supra*). On the other hand the duty to defend attaches if the complaint alleges facts some part of which, if proved, would fall within policy coverage (*Sturges Mfg. Co. v Utica Mut. Ins. Co.,* 37 NY2d 69, 73, *supra*).

The thrust of defendant's argument is that the statements made in the two Lederer letters, those of January 7 and January 28, 1980 are similar in substance to those in the three documents which followed; that those two letters preceded the effective date of the policy and, therefore, under the express provisions of the policy all are excluded from coverage. This argument begs the crucial question — on whose behalf and pursuant to what authority were these two letters sent? They are on the personal stationery of Bruno Lederer. The content of the letters plainly indicate that they are a personal response to the activities of O'Rourke. Nowhere has Lederer indicated that he was acting on behalf of Bronte or that he was authorized by Bronte to send the letters. Indeed, other than the fact that he was then a vice-president and director of Bronte there is nothing which, arguably, could be urged to tie Bronte to these letters. The fact that the two documents from Bronte which are alleged to be defamatory — the resolution of April 16, 1980 of the board of directors and the June 16, 1980 letter of Abelman — are substantially similar in content is of no moment for as the insurance policy records, it insures against damage to the insurer from "the first injurious publication or utterance of the same or similar material by or on behalf of the named insured". Absent publication by Lederer *by or on behalf of the named insured* the claim of similarity is irrelevant.

Since the documents relied on to impose liability on Lederer are not documents of or related to Bronte, neither defense nor indemnity is owed by Commercial Union to him. On the other hand Commercial Union is required to defend Bronte and Abelman. Further, it is required to reimburse them for all sums thus far expended by them in their defenses thus far.

Accordingly, the order of Supreme Court, Bronx County (IRWIN SILBOWITZ, J.), entered on or prior to July 7, 1983, denying plaintiffs' motion for partial summary judgment on their first cause of action should be reversed, on the law, and the motion granted to the extent of requiring defendant to defend plaintiffs Villa Charlotte Bronte, Inc., and Cecil Abelman in an action entitled O'Rourke v Lederer et al., and requiring defendant to compensate said plaintiffs for the costs of their defense thus far in said action and dismissing the complaint as to plaintiff Bruno Lederer, all without costs.

KUPFERMAN, J. P., SANDLER, CARRO and LYNCH, JJ., concur.

Order, Supreme Court, Bronx County, entered on or about July 7, 1983, unanimously reversed, on the law, and the motion for partial summary judgment on their first cause of action granted to the extent of requiring defendant to defend Villa Charlotte Bronte, Inc., and Cecil Abelman in an action entitled O'Rourke v Lederer et al., and requiring defendant to compensate said plaintiffs for the costs of their defense thus far in said action, and dismissing the complaint as to plaintiff Bruno Lederer, without costs and without disbursements.