PAXTON-MITCHELL COMPANY, *Respondent,*
*v.*
ROYAL INDEMNITY COMPANY, *Appellant.*
(No. 411-820, SC 24620)

569 P2d 581

Charles E. Hodges, Jr., Portland, argued the cause and filed briefs for appellant.

Jeffrey M. Batchelor, Portland, argued the cause for respondent. With him on the brief were David C. Landis, and Gearin, Cheney, Landis, Aebi & Kelley, Portland.

Before Denecke, Chief Justice, and Holman,* Howell, and Lent, Justices.

HOWELL, J.

---

*Holman, J., did not participate in this decision.

## HOWELL, J.

Plaintiff, Paxton-Mitchell Company, filed this action against its insurance carrier, Royal Indemnity Company, to recover defense expenses and damages paid to satisfy the judgment in a prior action. The trial court entered findings and judgment in favor of plaintiff, and defendant appeals.

Plaintiff manufactures mobile cranes called "Snoopers" which are installed on vehicles and are used to paint the undersides of bridges. In 1971, Frank Klaas purchased a Snooper from plaintiff and also purchased a 1967 Ford flatbed truck from a Ford agency in Omaha, Nebraska. The cost of the truck was combined with the cost of the Snooper for financing purposes as a convenience to Klaas and billed through the plaintiff. Plaintiff poured 5,000 pounds of concrete on the flatbed, reinforced the truck by adding steel to the frame, and then installed the Snooper on the bed of the truck. Klaas paid plaintiff $25,400 for the entire unit, $2,850 of which represented the cost of the truck. In July, 1971, while Klaas was using the equipment to paint a bridge in Portland, it tipped over and was extensively damaged.

Klaas filed an action against plaintiff alleging both strict liability and negligence and recovered a judgment of $22,331.90 against plaintiff for damages to the truck and the Snooper.[1] Plaintiff tendered defense of the action to defendant which refused it. Plaintiff filed this action to recover $2,850 as the value of the truck only, plus costs and attorney fees in the prior action and attorney fees in this action.

Defendant first contends that it had no obligation to defend the Klaas action or to pay any part of the damages because of two exclusions in its policy with

---

[1] For a discussion as to whether strict liability as stated in Section 402A of the Restatement of Torts 2d (1965) applies to damages to property, *see Brown v. Western Farmers Assoc.*, 268 Or 470, 521 P2d 537 (1974).

plaintiff. The relevant policy provisions are as follows:

"I. COVERAGE—BODILY INJURY AND PROPERTY DAMAGE LIABILITY

"The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

"Exclusions

"This insurance does not apply:

"* * * * *.

"(1) to property damage to the named insured's products arising out of such products or any part of such products;

"(m) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

"* * * * *."

Clause (1) excludes coverage for damages to the plaintiff's "product," and clause (m) to the insured's "work." The trial court held that damages to the Ford truck were not excluded from the policy because the truck was not the insured's product and thus defendant should not have rejected the tender of defense in the Klaas action.

■ The obligation of an insurer to defend and the obligation to pay all or part of a judgment against the insured are separate matters. *Burnett v. Western Pac. Ins. Co.,* 255 Or 547, 553, 469 P2d 602 (1970). Whether the insurer is required to defend an action brought against its insured depends upon whether it is possible

under the complaint to impose liability for conduct or damage covered by the policy. *Burnett v. Western Pac., supra; Isenhart v. General Casualty Co.,* 233 Or 49, 54, 377 P2d 26 (1962). If the complaint contains some allegations of conduct or damage excluded from the policy but has other allegations which would fall within the policy coverage, the insurer has a duty to defend. *Ferguson v. Birmingham Fire Ins.,* 254 Or 496, 506, 460 P2d 342 (1969). If the allegations of the complaint are ambiguous or unclear and may be reasonably interpreted to include coverage, there is a duty to defend. *Blohm et al v. Glens Falls Ins. Co.,* 231 Or 410, 416, 373 P2d 412 (1962).

The allegations against plaintiff in the original complaint in the prior action for damages included the following:

**COUNT ONE**

"* * * * *.

II.

"Defendant Paxton-Mitchell Company, at all times herein mentioned, was engaged in the business of designing, manufacturing, assembling and distributing certain mobile underbridge hydraulic work platforms described by trade name as a 'Standard Snooper', and used in bridge construction, maintenance and repair.

"* * * * *.

IV.

"On or about June 23, 1971, plaintiff purchased from defendant Andrews & Andrews Equipment Co., in Portland, Oregon, that certain mobile underbridge hydraulic work platform designated as a 'Standard Snooper', Serial No. 2667, mounted upon and including that certain 1967 Ford truck cab and chassis, Serial No. C61CUA56264, which said equipment was designed, manufactured, assembled and distributed by defendant Paxton-Mitchell Company.

V.

"On or about June [July] 28, 1971, said equipment was being used in its intended manner for painting the underspan of the Fremont Bridge in Portland, Multnomah County, Oregon, when said equipment tipped and

[ 611 ]

fell from said bridge to the ground below, and thereby caused it to be bent, twisted, torn and broken, to plaintiff's damage in the amount of $23,200.00, said amount being the difference between the reasonable value of said equipment immediately before and immediately after said accident.

"                                    VI.

"Defendants knew, or in the exercise of reasonable care should have known that any defect in the design, manufacture, or assembly of said 'Standard Snooper' would render said equipment unstable and susceptible to tipping and falling, when used in its intended manner.
"* * * * *.

"                            COUNT TWO

"* * * * *.

"                                    II.

"At all times herein mentioned, said 'Standard Snooper' was designed, manufactured, assembled, and distributed in a defective condition, so as to render it unreasonably dangerous for use in its intended manner, and as a proximate result thereof plaintiff has been damaged as aforesaid."

In the second amended complaint, Count Two read as follows:
"                                    II.

"At all times herein mentioned, said 'Standard Snooper' was designed, manufactured, assembled, and distributed in a defective condition, so as to render it unreasonably dangerous for use in its intended manner in that defendants failed to equip the Ford chassis of said equipment with spring lock-out devices to maintain its stability while being used for its intended purpose; they failed to install sufficient ballast and failed to properly distribute [the ballast] in the chassis of said equipment so as to maintain its stability while being used for its intended purpose; they failed to utilize a truck chassis with tandem rear axle so as to maintain a stability of said equipment while being used for its intended purpose; they failed to equip the Ford chassis with dual outrigger wheels rather than a single outrigger wheel, so as to maintain its stability while being used for its intended purpose; they failed to locate the pivot point of

[ 612 ]

the snooper boom at a point that would equalize the center of gravity on the chassis of the Ford truck; and they installed the snooper boom equipment on a cab-over Ford chassis so as to unequalize the center of gravity on the chassis and create a greater condition of instability; and as a proximate result thereof, plaintiff has been damaged as aforesaid.

"* * * * *."

In Count One, Klaas initially alleged that plaintiff manufactured the Snooper. He then alleged that the Snooper was mounted on a Ford truck. It is unclear whether Klaas' later use of "said equipment" refers to both the Snooper and the truck, or just to the Snooper. In Count Two, "said equipment" refers to both the Snooper and the truck, but "equipment" is not synonymous with "product," and even the Count Two allegations do not clearly indicate that Klaas believed the truck to be the plaintiff's product. In effect, Klaas could have been alleging that plaintiff manufactured the Snooper, it was defective, and the defect resulted in damage to the Snooper and to the Ford truck.

It is possible under these allegations to conclude that the Ford truck was not the plaintiff's product and thus that the complaints did not allege damage that was necessarily excluded by the policy. Under the language of the policy and the tests set out by this court in *Burnett v. Western Pac. Ins. Co., supra,* the insurance company had a duty to defend.

Appellant next argues[2] that even if it had a duty to defend, it has no duty to pay for the damage to the truck because that damage is excluded by clauses (l) and (m), in that the Ford truck was the "product" or

---

[2] Appellant, in its brief, argued that the trial court was bound by the findings of fact in the *Klaas v. Paxton-Mitchell, Inc.,* action under the doctrine of collateral estoppel. At oral argument, however, the appellant conceded that if *Ferguson v. Birmingham Fire Ins.,* 254 Or 496, 460 P2d 342 (1969), was applicable, such an argument would be without merit. *Ferguson* does apply, and plaintiff's collateral estoppel argument is incorrect because the interests of plaintiff and defendant were not identical in the Klaas action and there was at least a potential conflict of interest between the parties herein in the original Klaas action.

[ 613 ]

"work"[3] of the plaintiff. The insurer has the burden of showing that the truck falls within the exclusion. *Bridal Veil L. Co. v. Pacific Coast C. Co.,* 75 Or 57, 145 P 671 (1915).

These exclusions have been construed by several courts,[4] and while most of these decisions have held, at least implicitly, that something is or is not "product" or "work," e.g., *Sturges Manufacturing v. Utica Mutual Ins.,* 37 NY2d 69, 371 NYS 2d 444, 332 NE2d 319 (1975); *Hartford Accident v. Olson Bros.,* 187 Neb 179, 188 NW2d 699 (1971); *Haugan v. Home Indemnity Co.,* 86 SD 406, 197 NW2d 18 (1972); and *Engine Service v. Reliance Insurance,* 487 P2d 474 (Wyo 1971), few courts have articulated a standard for defining the terms.

One method of defining these terms is found in *Green Construction Co., Inc. v. Liberty Mutual Ins. Co.,* 213 Kan 393, 517 P2d 563 (1973), which deals with the general contractor of a library and holds that the term "work" in exclusion (m) should be defined broadly to include all articles "handled" by the insured. *Green* relies on the earlier Kansas case of *Kendall Plumbing Inc. v. St. Paul Mercury Ins. Co.,* 189 Kan 528, 370 P2d 396 (1962), to support its broad reading of the term

---

[3] Although the appellant argues that the truck was "work" under clause (m), the exclusion does not seem to apply here. The total purchase price of the Snooper and the truck, including alterations, was $25,400. The invoice shows that $2,850 of that figure represented the cost of the truck, about $3,000 represented the cost of the alterations to the truck, and the balance was the cost of the Snooper. Since the plaintiff does not claim the cost of the alterations and since the trial court limited its award to the value of the truck, the "work" clause does not apply.

[4] We note that a number of authorities relied on by the parties do not construe the clauses at issue in this case but, rather, construe a clause "h-4" which is similar. Clause h-4 excludes damage to:

"Any goods or products manufactured, sold, handled, or distributed by the Insured or work completed by or for the Insured out of which the accident arises." *Kendall Plumbing Inc. v. St. Paul Mercury Ins. Co.,* 189 Kan 528, 370 P2d 396 (1962).

The clauses attempt to exclude the same types of damage, and we agree with the Kansas Supreme Court, which held in *Green Construction Co., Inc. v. Liberty Mutual Ins. Co.,* 213 Kan 393, 517 P2d 563 (1973), that clause h-4 is functionally equivalent to clauses (l) and (m), and we also note that these authorities could be considered even if the clauses were dissimilar because, at bottom, they seek to define the same concepts of product and work.

"work." In *Kendall* the plaintiff plumbing company independently purchased and installed a refrigerator unit and a starter unit as part of a heating and air conditioning system. Defective installation caused damage to the refrigeration unit, and Kendall Plumbing sought to have its insurance carrier compensate it for that damage. The court construed the clause broadly and unambiguously to exclude from coverage everything worked on by the plaintiff, regardless of ownership. *Kendall* and *Green* can be read together for the proposition that exclusions (l) and (m) apply to all goods handled by an insured in the process of completing its business function.[5]

"Product" has also been defined more narrowly as that in which the insured trades or deals:

"What are 'goods or products'? These two words standing alone have a meaning which is most commonly associated with the commercial world. They are most often thought of as some tangible or material units in which one trades. The qualifying words 'manufactured, sold, handled or distributed' really do not broaden the

---

[5] Another construction of "product" in clause (l) is found in *Rowland Constr. v. St. Paul F. & M. Ins.*, 72 Wash 2d 682, 434 P2d 725 (1967), and *Pittsburgh Bridge and Iron Works v. Liberty Mut. Ins. Co.*, 444 F2d 1286 (3d Cir 1971).

*Rowland* involved a house fire caused by the defective placement of some floor joists. There, the court stated that in order to determine the application of exclusion (l) it had to determine the "product" out of which the accident arose, and since it had no way of knowing whether "product" referred to the floor joists or to the entire house, the exclusion was ambiguous and must be resolved in favor of the insured. *Pittsburgh Bridge,* relying on *Rowland,* concluded that it was unclear from the language of the exclusion what "product" was intended to mean. Both cases specifically reject the *Kendall-Green* construction of the conclusion.

Additionally, *Rowland* points out that the insurance industry itself finds ambiguity in these exclusions and quotes an industry release to that effect:

" 'A common source of argument—not answered by any decisions at present—is liability arising out of a piece of equipment with *several distinct parts,* all sold or installed by the *same insured at the same time.* Should a defect in one part or a faulty installation of that part damage the balance of the equipment, it is not clear whether the exclusion would deny coverage for damage to the entire piece of equipment or only to the portion causing the damage.' " *Rowland Constr. v. St. Paul F. & M. Ins., supra* at 687-88.

ordinary meaning associated with these words, but limit 'goods or products' to those in which the insured trades or deals. * * *" Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know,* 50 Neb L Rev 415, 429-30 (1971).

This definition is supported by the Connecticut Supreme Court's decision in *Smedley Co. v. Employers Mutual Liability Ins. Co. of Wis.,* 143 Conn 510, 123 A2d 755 (1956). Although the court in *Smedley* was construing a different clause, it defined "products" in the same way:

"* * * The 'goods or products' which are involved in an accident, if the exclusion of coverage is to obtain, must be those 'manufactured, sold, handled or distributed' by the insured. In the case at bar, the twenty-five bags placed by Smedley on its shipping platform for the independent trucker to pick up represented 'goods or products' which, concededly, Smedley did not manufacture, sell or distribute. But, says the defendant, the 'goods or products' may also be those that are 'handled.' It is true that the verb 'handle' means to 'touch; to feel with the hand; to hold, take up, move, or otherwise affect, with the hand.' * * * Webster also defines 'handle' as 'to buy and sell; to deal, or trade, in.'

"That the intention of the insurer was to restrict the word 'handled' to this meaning is apparent from the words 'manufactured, sold * * * or distributed,' with which it is linked. * * * Since the plaintiff was not engaged in buying or selling, dealing or trading in the Maize-Products company's goods or products, the first paragraph of the 'products hazard' definition is not applicable and does not exclude coverage for the plaintiff." *Smedley Co. v. Employers Mutual Liability Ins. Co. of Wis., supra* at 758.

■ The parties did not introduce the entire insurance policy and therefore we do not know if "product" was defined in the policy. We reject the *Kendall-Green* definition of product as everything handled by the insured as being too broad. The *Smedley* definition, as that in which the insured trades or deals, seems more logical because as between two business parties the commercial sense of the word would be intended. We

conclude that, in the absence of any policy definition to the contrary, an insured's product under clause (1) is that in which the insured trades or deals.

██ ■ The appellant concedes in its brief that whether or not the truck is a product was a question of fact for the trial court and that our review is limited by the substantial evidence rule. The appellant argues that, in applying the law to these facts, there is not substantial evidence to support the trial judge's decision that the plaintiff does not deal in trucks and points to the following factors: (a) plaintiff's specifications controlled the selection of the truck; (b) plaintiff extensively modified the truck; (c) plaintiff had exclusive control and supervision over the modification; (d) the Snooper operated off the truck motor; (e) the truck's weight was necessary for stability; (f) the unit was tested together before being released; and (g) Klaas received custody of the unit as a whole and was never in possession of the truck without the Snooper attached.

Respondent also lists facts which he feels indicate that the truck was not his product, including: (a) the Snooper can be mounted on a platform other than a truck; (b) because it can be mounted on anything, the Snooper is a complete unit in and of itself; (c) generally, plaintiff supplies the Snooper and the customer supplies the truck; (d) Klaas chose the truck; and (e) Klaas at all times held title to the truck.

There is substantial evidence to support the finding of the trial court that the Ford truck itself was not plaintiff's "product" and therefore is not excluded from coverage under the policy.[6]

The judgment of the trial court is affirmed.

---

[6] Plaintiff also contends that the trial court determined the value of the truck incorrectly but offers no support for such an assertion other than saying that the $2,385 figure is speculative. The measure of damage is the difference between its value before and after the accident. *Goff v. Elde,* 132 Or 689, 692-93, 288 P 212 (1930). The value of the truck when purchased a month before the accident was $2,850, and the record shows that it was totally destroyed. We see nothing speculative in such a valuation.