Argued and submitted August 18, affirmed December 8, 1980

INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA,
*Respondent,*

*v.*

A. J. ZINDA COMPANY,
*Appellant.*

(No. A7806 09894, CA 16928)

A. J. ZINDA COMPANY,
*Appellant,*

*v.*

INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA,
*Respondent.*

(No. A7807-11958, CA 16928)

620 P2d 504

Paul R. Meyer, Portland, argued the cause for appellant. With him on the briefs was Kobin & Meyer, Portland.

Michael J. Gentry, Portland, argued the cause for respondent. With him on the brief was Tooze, Kerr, Marshall & Shenker, Portland.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

THORNTON, J.

## THORNTON, J.

Plaintiff A. J. Zinda Company appeals from a judgment for defendant, plaintiff's umbrella liability insurer, in this action on the insurance contract. The general issue is whether defendant had a duty to defend plaintiff in litigation through which Ellingson Lumber Company (Ellingson) sought damages attributable to equipment plaintiff sold Ellingson. The specific question is whether the insurance contract excluded coverage for damage to equipment which was sold to Ellingson by plaintiff but which was manufactured by Coen Company (Coen) and installed by plaintiff in combination with plaintiff's own equipment as part of an integrated system.[1] We conclude that defendant had no duty to defend, and we therefore affirm the judgments.

As stated in plaintiff's brief, the relevant facts are:

"Ellingson was first contacted by Coen, which manufactures combustion equipment capable of burning lumber products, to sell Ellingson on its hog fuel system of burning material at the entrance to a boiler and precipitating the cinders and other materials in a multicone after the fire goes through the boiler. When Coen had 'sold' Ellingson on its particular system, arrangements were made for Ellingson to contract with Zinda to furnish a boiler and to obtain from Coen the auxiliary equipment to use with the boiler to burn the hog fuel and to dispose of the excess cinder collection at the exhaust end of the boiler. The Coen equipment cost approximately $150,000.00; the boiler furnished by Zinda approximately $300,000. * * * Essentially, Zinda was to furnish the basic standard boiler, which was its product. Coen was to furnish the combustion devices, burning mechanisms, cinder collection and pollution

---

[1] The judgment also determined a consolidated declaratory judgment action, brought by the insurer, which involved the same issues. The designations "plaintiff" and "defendant" in this opinion refer to the parties in the insured's action to recover on the policy.

Plaintiff named its primary insurer as well as the umbrella insurer as defendants in the action, but now concedes that the primary insurance does not cover the loss in question.

At trial, plaintiff unsuccessfully sought damages for settlement payments it made to Ellingson as well as defense costs. On appeal, plaintiff appears to argue that the trial court erred only in denying recovery for the defense costs. In any event, the basis for our disposition applies equally to the alleged duties to defend and to pay.

control and other auxiliary equipment to be affixed to the basic boiler unit. Because Zinda was a contractor located in Oregon, it entered the 'prime' contract with Ellingson and gave a purchase order to Coen for the Ellingson specified Coen equipment. Except for a specific installation requirement, as in the Ellingson case, Zinda does not generally stock or handle Coen products. Furthermore, in the installation of the Ellingson sawdust and hog fuel combustion and cinder collection system, Coen had its own personnel assisting with the installation and making its various combustion and cinder collecting equipment work."[2]

---

[2] Defendant argues that whether it had a duty to defend must be ascertained solely from the pleadings through which Ellingson sought damages from plaintiff. Plaintiff agrees that the pleadings alone should be looked to in connection with Ellingson's state court action, but argues that that restriction does not apply to Ellingson's pleading in the federal court case because notice pleading may not sufficiently inform an insurer whether it covers a loss and the pleadings therefore do no more than place the insurer on reasonable inquiry.

Ellingson's pleadings in the federal and state actions proceed on the theory that plaintiff and Coen were joint participants in the sequence of events leading to the installation of the defective system. For example, Ellingson's state court complaint alleges:

"At all times material herein defendants [Zinda and Coen] were acting individually and in joint concert with respect to the design, planning, engineering, procurement of equipment, and services relating to the installation of a new boiler, combustion controls, pollution control equipment and auxiliary equipment recommended, furnished and sold to plaintiff [Ellingson]."

The quoted portion of plaintiff's statement of facts is somewhat more favorable to plaintiff's position in this appeal than Ellingson's pleadings alone would be; even based on the facts in plaintiff's statement, however, we would conclude that defendant had no duty to defend. Plaintiff's statement should be amplified by adding the following testimony of its president:

"Q Now, in respect to what you did, could you describe to Judge Roth just briefly—very briefly just tell the judge what you did and what Coen furnished, what were the respective portions of the work?

"A Well, we did all of the installation. They furnished certain equipment for the burning of the product. They wanted to get rid of our excess products, you might say, sawdust and wood chips. We had the cinder collection type of thing.

"Q That is Coen?

"A That's right.

"Q So in effect they took care of the burning—

"A Right.

"Q —at the beginning of the entrance to the business and took care of the collection and dealing with the cinders and other burnt materials at the conclusion of the combustion process?

After the system proved defective in a variety of respects, Ellingson sought damages from plaintiff through a cross-claim in a federal court action and through a state court complaint. Among Ellingson's allegations was that the defects in the system "resulted in damage to boiler components and auxiliary equipment." Plaintiff tendered the defense of the actions to defendant pursuant to the defense endorsement of their contract.

Defendant argues that it had no duty to defend, because all of Ellingson's allegations relate to matters which are outside the contract's coverage by virtue of paragraph (b) of the exclusions. That paragraph provides that the policy does not apply to claims

"(i)    for repairing or replacing any defective product or products manufactured, sold or supplied by the Assured or any defective part or parts thereof nor for the cost of such repair or replacement;

"(ii)   for the loss of use of any such defective product or products or parts thereof;

"(iii) for improper or inadequate performance, design or specification; but nothing herein contained shall be construed to exclude claims made against the Assured for personal injuries or property damage (other than damage to a product of the Assured) resulting from improper or inadequate performance, design or specification."

---

"A It's pretty commonly known that their business they sell it to everybody that sells boilers. They don't do—they're not contractors per se. We did all the labor, you might say, and were the general contractor.

" * * * * *

"Q So, in other words, your dealings with Ellingson Lumber Company were that you would supply a certain package and that package included equipment that you might have to buy on purchase order from Coen and incorporate in the whole package that you were selling, installed, to Ellingson Lumber. Is that a fair summary?

"A That's true.

"Q So that when we're talking about Coen equipment, it may have been manufactured by Coen but it was all purchased by you, incorporated into the job you sold Ellingson and then billed, in effect, from you to Ellingson?

"A That's right."

Plaintiff argues that some of the damage alleged by Ellingson resulted from improper or inadequate performance, design or specification, within the meaning of subparagraph (b)(iii) of the exclusions; that unlike subparagraphs (b)(i) and (ii), subparagraph (b)(iii) excludes coverage *only* for "damage to a *product* of the Assured" rather than "products *or parts thereof*"(emphasis added); that the Coen equipment was a "part" of plaintiff's product rather than the whole product and that subparagraph (b)(iii) therefore did not relieve defendant from the duty to defend plaintiff for losses allegedly resulting from damage to the Coen equipment due to improper or inadequate performance, design or specification. Plaintiff argues further that, because the duty to defend extends to an entire lawsuit if *any* of the allegations of damage are within an insured's coverage, defendant is responsible for all costs incurred by plaintiff in defending against the Ellingson claims. *See Paxton-Mitchell Co. v. Royal Indemnity Co.,* 279 Or 607, 611, 569 P2d 581 (1977).

We note at the outset that, for purposes of the exclusions, the Coen-manufactured equipment was either a product of plaintiff's *or* a part of plaintiff's product, notwithstanding its manufacture by a different entity. The Coen equipment was sold and/or supplied by plaintiff to Ellingson, within the meaning of subparagraph (b)(i). The only issue is whether the Coen equipment is excepted from the exclusions because, as plaintiff argues, it was only "part" of a product rather than a "product."

Plaintiff relies on *Timberline Equip. v. St. Paul Fire and Mar. Ins.,* 281 Or 639, 576 P2d 1244 (1978). Timberline, a dealer in logging equipment, brought the action against its insurer, St. Paul, to recover defense costs and indemnity in connection with an action by and settlement with a logger for damage to a tower Timberline had sold to the logger. The damage was caused by defective guylines, which had also been sold to the logger by Timberline. Timberline had originally acquired the tower and the guylines from other entities, and had not manufactured the equipment.

The insurer argued that

"* * * its policy excludes liability for damages to the tower. An exclusion clause of the policy provides that the

insurance does not apply: '(k) to property damage to the Named Insured's products arising out of such products or any part of such products.' The policy's definitions provide: 'Named Insured's products means goods or products manufactured, sold, handled or distributed by the Named Insured * * *.' St. Paul contends the tower and guylines were 'products * * * sold * * * by the Named Insured' and the damage to the tower arose out of 'a part of such products'; that is, the guylines. The issue is whether the policy excludes recovery for only damage to the guylines or also damage to the tower." 281 Or at 642.

The court generally agreed with the insurer, stating:

"The exclusion clause in the standard policy formerly excluded damages to: 'Any goods or products manufactured, sold, handled, or distributed by the Insured or work completed by or for the Insured out of which the accident arises.' *Paxton-Mitchell Co. v. Royal Indemnity Co., supra* (279 Or at 614, n 4) quoting from *Kendall Plumbing Inc. v. St. Paul Mercury Ins. Co.,* 189 Kan 528, 370 P2d 396 (1962).

"Some courts construed this clause not to exclude recovery for damages to one or more components of the whole caused by a defect in another component. For example, *Blackfield v. Underwriters at Lloyd's,* 245 Cal App2d 271, 53 Cal Rptr 838 (1966). In 1966 this exclusion in the standard policy was revised in an attempt to change this interpretation. * * * The exclusion clause in the present policy is the 1966 revised version. It provides that the coverage does not apply 'to property damage to the Named Insured's products arising out of such products *or any part of such products.'* (Emphasis added.) Applied to this case, we construe that clause to mean that this insurance does not apply to property damage to Timberline's products (the tower and guylines) caused by part of these products; that is, the defective guylines. Thus construed, the policy does not cover the damage to the tower or loader." 281 Or at 644. (Emphasis in original; citation omitted.)

Plaintiff argues in the present case that, under the *Timberline* rationale, a policy which excludes coverage for damage to "products" but does not also expressly exclude coverage for damage to "parts" necessarily covers damage to the parts.

We do not share plaintiff's understanding of the basis for the decision in *Timberline* or of the decision's

application to this case. The exclusion in *Timberline* applied to "property damage *to* * * * *products"* if such damage *"[arises] out of* such products or any part of such products." (Emphasis added.) The exclusion we construe provides that coverage is *not* excluded for "property damage *(other than damage to a product* of the Assured) *resulting from* improper or inadequate performance, design or specification." (Emphasis added.) Although the policy language in *Timberline* and the language here are somewhat analogous, the issues in the two cases differ. In *Timberline* the court's analysis did not turn on whether coverage was excluded for *the thing damaged,* but on whether coverage was excluded because the damage was *caused* in a particular manner.[3] The issue in the present case is the converse, to-wit, whether the the exclusion applies to *the thing damaged.* Stated more specifically, the question is whether the equipment manufactured by Coen is a "product" of plaintiff's and therefore whether coverage for damage to it is excluded by subparagraph (b)(iii).

Although the issue in *Timberline* differed from the issue here, the opinion in that case provides some guidance. The relevant policy language in *Timberline* was similar to paragraph (b)(iii) of defendant's policy with respect to what *damage* came within the exclusion (although not with respect to the *causes* of such damage). The *Timberline* exclusion applied to "property damage to * * * products * * *," and said nothing about damage to parts of products. The court stated in *Timberline:*

> "* * * [W]e construe that clause to mean that this insurance does not apply to property damage to Timberline's *products (the tower and guylines)* caused by *a part of these products; that is, the defective guylines * * *."* 281 Or at 644. (Emphasis added.)

The quoted language *suggests* that the word "part" does not refer exclusively to a *component* of *a* product, but refers also—or instead—to *one of several* products. Even

---

[3] Plaintiff assumes that the court in *Timberline* implicitly adopted the interpretation it ascribed to "some courts," that an exclusion clause which does *not* expressly refer to damage to a product caused by parts of the product does not apply to such damage. For reasons similar to those which lead us to our holding, we disagree with that assumption and, if the question were presented, would reject the interpretation.

more suggestive of that meaning is the language of the United States Court of Appeals in *Biebel Bros., Inc. v. United States Fidelity & G. Co.,* 522 F2d 1207 (8th Cir 1975), which the court quoted with approval in *Timberline.* The insured in *Biebel* provided asphalt, base sheets and roofing felts for a roof. Because the asphalt was defective, the base sheets and felts as well as the asphalt had to be removed. As quoted in *Timberline,* the Court of Appeals stated:

> " '* * * [T]his exclusion is limited to property damage to appellee's products arising out of such products or any part of such products. The record conclusively establishes that the damaging agent was appellee's asphalt and that the only other property damage was to appellee's products, namely the asphalt coated base sheets and the two layers of saturated roofing felts. Because all the damaged products were removed and replaced, it is obvious that the building itself was not damaged.' 522 F2d at 1211." 281 Or at 645.

Whether the word "part" refers to a component of a single "product" or to one of a number of "products," however, the absence of that word (or words of comparable meaning) from the exception to the exclusion in part (b)(iii) does not render the exclusion inapplicable to damage to the Coen equipment. If the Coen equipment is viewed as a constituent part of plaintiff's single "product," it does not follow that the product itself is not damaged if one of its components is; no reason occurs to us why an insurance contract would differentiate between the coverage of a whole product and part of a product for identically caused damage, or why the parties to such a contract would place themselves in the position of adjusting claims on the basis of whether there is enough damage to a part or damage to enough parts to affect the whole.[4] Conversely, if the boiler unit and the Coen equipment are viewed as separate "products" of plaintiff, then the damage to the latter is by definition damage to a product of plaintiff's.

■ The interpretation which plaintiff urges upon us has no logical basis. The court noted in *Timberline* that the

---

[4] We note that under plaintiff's interpretation of the exclusion, coverage for damage to its own boiler equipment would not be excluded unless the Coen equipment were also damaged.

purpose of exclusions of the kind construed there and here is to limit the insurer's risk to third-party injuries, as distinguished from damage to the insured's own products. The parties to this contract could not have intended that there would be no coverage if 99 percent of a product were damaged, but that there would be coverage if the entire product were affected. We find it hard to imagine circumstances under which *every* part—and therefore the whole— of a product would be damaged through deficiencies of performance, design or specification. An example of circumstances where the exclusion as plaintiff interprets it *could* apply would exist if a product were successfully designed to produce but unsuccessfully designed to contain the universal solvent. The courts are enjoined to construe insurance contracts to favor coverage. However, that injunction does not require the courts to interpret the language of such contracts in a way which "reduce[s] them to nonsense." *Jarrard v. Continental Casualty,* 250 Or 119, 127, 440 P2d 858 (1968).

■ We conclude that paragraph (b)(iii) of the exclusions applies to damage to the Coen equipment, and that defendant had no duty to defend plaintiff in the Ellingson litigation.

Affirmed.