UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JEFFREY L. TIBBETTS,
            *Plaintiff-Appellant,*

            v.

YALE CORPORATION, a/k/a The
President and Fellows of Yale;
RICHARD LEVIN, Individual and
Official capacity; DOROTHY
ROBINSON, Individual and Official
capacity; HAROLD A. ROSE,
Individual and Official capacity;
WOMBLE, CARLYLE, SANDRIDGE AND
RICE LAW FIRM; USA GROUP
FOUNDATION; WILLIAM DOYLE;
WIGGIN & DANA,
            *Defendants-Appellees,*

            and

JOHN ROWLAND, Individual and
Official capacity; JODI RELL,
Individual and Official capacity;
KURT SCHMOKE, Individual and
Official capacity; FRANCES BEINECKE,
Individual and Official capacity;
DIANA BROOKS, Individual and
Official capacity; JOSE CABRANES,
Individual and Official capacity;
BENJAMIN CARSON, Individual and
Official capacity; SUSAN CROWN,
Individual and Official capacity;
CHARLES ELLIS, Individual and
Official capacity; RICHARD FRANKE,
Individual and Official capacity;

No. 01-1863

RUBY HEARN, Individual and Official capacity; JOHN LEE, Individual and Official capacity; VICTORIA MATTHEWS, Individual and Official capacity; JOHN PEPPER, Individual and Official capacity; HENRY SCHACHT, Individual and Official capacity; JOSEPH MULLINIX, Official Capacity; BILL STEMPEL, Individual and Official capacity,

*Defendants.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-00-2004-A)

Argued: June 5, 2002

Decided: September 26, 2002

Before MICHAEL, Circuit Judge, Robert R. BEEZER, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation, and Benson Everett LEGG, United States District Judge for the District of Maryland, sitting by designation.

Affirmed by unpublished opinion. Judge Legg wrote the opinion, in which Judge Michael and Senior Judge Beezer joined.

**COUNSEL**

**ARGUED:** John M. DiJoseph, KAVRUKOV & DIJOSEPH, L.L.P., Arlington, Virginia, for Appellant. Philip Browder Morris, MORRIS

& MORRIS, Richmond, Virginia; Richard Albert Simpson, ROSS, DIXON & BELL, L.L.P., Washington, D.C.; David Armistead Greer, HOFHEIMER & NUSBAUM, P.C., Norfolk, Virginia, for Appellees. **ON BRIEF:** Mary Helen Sears, M.H. SEARS LAW FIRM CHARTERED, Washington, D.C.; David E. Jones, LAW OFFICE OF DAVID JONES, Fairfax, Virginia, for Appellant. Michael R. Ward, MORRIS & MORRIS, Richmond, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

LEGG, District Judge:

Plaintiff Jeffrey Tibbetts appeals a district court order dismissing his Complaint under FRCP 12(b)(6) and denying his request to file a Second Amended Complaint. We agree, in relevant part, with the district court's conclusions, and, accordingly, affirm.

### I.

In 1987, Yale University charged Jeffrey Tibbetts with plagiarism and suspended him from its Divinity School. J.A. 182. In 1992, Yale dismissed the charges and allowed Tibbetts to graduate. J.A. 60.

In 1995, Jeffrey Tibbetts brought the first of five *pro se* lawsuits that he has filed against Yale University and various Yale employees. These lawsuits generally allege defamation and interference with prospective business advantage stemming from the suspension.[1] Tibbetts also contends that Yale's abusive litigation tactics during the lawsuits drained his finances and forced him to file for bankruptcy in 1998.

---

[1]Not counting the instant appeal, three of Tibbetts' suits are still pending.

J.A. 41. The bankruptcy proceedings and Yale's part in them lie at the heart of this appeal.

On January 8, 1998, Tibbetts filed a Voluntary Petition for Bankruptcy under Chapter 7 of the U.S. Bankruptcy Code.[2] Tibbetts listed Yale as an unsecured creditor for a $11,230 loan that Yale extended to him while he was a student.[3] J.A. 25. Tibbetts and a university official later concluded that this debt was not, in fact, owed to Yale because Yale had assigned the loan and no longer held the paper. J.A. 123. Tibbetts subsequently filed an amended schedule of creditors deleting Yale. Yale also figured in Tibbetts' bankruptcy on the asset side of the ledger, as he listed his lawsuits against the University as assets.[4]

As part of the Chapter 7 liquidation, the bankruptcy court appointed a trustee to marshal Tibbetts' assets. After negotiations, the Trustee and Yale agreed to settle Tibbetts' lawsuits against the university. The settlement provided that Yale would "pay the Trustee $4,000 in return for a full and complete release of any and all claims made by Tibbetts or the Trustee against Yale and related others." J.A. 104. Tibbetts does not allege that the Trustee acted in bad faith in negotiating this settlement.

Tibbetts was loathe to relinquish his lawsuits, however. He filed a Motion to Convert his bankruptcy proceeding from Chapter 7 to Chapter 13.[5] The bankruptcy court granted his motion on March 14, 1998. J.A. 42.

---

[2]A Chapter 7 case focuses on liquidating the debtor's assets to pay the creditors. The trustee collects the non-exempt property of the debtor, converts that property to cash, and distributes the cash to the creditors.

[3]Tibbetts listed Yale as a creditor on Schedule F of his bankruptcy petition.

[4]Tibbetts listed his lawsuits against Yale as assets on Schedules B and C of his bankruptcy petition.

[5]A Chapter 13 bankruptcy reorganizes the debtor's assets instead of liquidating them as is the case in Chapter 7. In Chapter 13, the debtor retains its assets and makes payments to creditors pursuant to a court approved plan.

Tibbetts did not list Yale as a creditor on his Chapter 13 petition. J.A. 18, 108, Reply Brief at 9. On May 11, 1998, however, Yale submitted a proof of claim for $580.18 ("the bursar claim"), which Tibbetts allegedly owed for transactions occurring between September 1990 and February 1991.[6] J.A. 126.

On July 14, 1998, Yale, joined by United Student Aid Funds ("USAF"),[7] one of Tibbetts' student loan providers, filed a Joint Motion to Reconvert the bankruptcy back to Chapter 7. Yale and USAF argued that Tibbetts had not proposed a confirmable Chapter 13 reorganization plan because Tibbetts' income exceeded his expenses by only $212.00 per month, and Tibbetts' proposed reorganization did not provide for repayment of his student loans.[8] J.A. 130.

On October 22, 1998, following briefing and a hearing, Tibbetts requested the court to dismiss his bankruptcy petition altogether. J.A. 29. On November 30, 1998, the court granted the request. The dismissal order was not docketed until December 2, 1998, however. J.A. 168, 183.

On December 1, 2000, Tibbetts, again acting *pro se*, filed the instant suit in the Eastern District of Virginia. Tibbetts' Complaint alleges that Yale, its attorneys, and other defendants committed various torts in the course of the bankruptcy litigation itself. His Complaint asserts claims for, *inter alia,* abuse of process, malicious prosecution, and vexatious suit. Boiled down to basics, Tibbetts contends that Yale's Motion to Reconvert was an abusive litigation tactic and fraud on the bankruptcy court.

---

[6]Tibbetts asserts that Yale's possible claim to this $580.18 is barred by Connecticut's statute of limitations.

[7]USAF filed a proof of claim in the amount of $17,028.99.

[8]As part of a Chapter 13 bankruptcy, the debtor must formulate a Chapter 13 plan that provides for payment of his creditors. The Chapter 13 plan is subject to judicial confirmation. In determining whether the plan is "confirmable," the court looks to a number of factors including whether the debtor has sufficient disposable income to fund the proposed plan.

The procedural history of the present case is as follows. On March 28, 2001, Tibbetts filed his First Amended Complaint. J.A. 20. In early May, 2001, Defendants moved to dismiss. J.A. 35a-d, 35e-g, 35 ddd-ggg. On May 8th, Tibbetts filed a Motion for Leave to Amend his complaint, which was dismissed without prejudice on May 18th. J.A. 7, 9. The court scheduled a hearing on Defendants' motions to dismiss for June 15, 2001. On June 8th, Tibbetts again filed a Motion for Leave to Amend Complaint. His proposed amendments, if allowed, would have added (i) factual support for the abuse of process, malicious prosecution, and vexatious suit counts; (ii) new counts for breach of contract and "malicious defense"; and (iii) USAF as a defendant in place of USA Group Foundation. J.A. 55-56. On June 18th, the district court dismissed the case with prejudice, denying Tibbetts leave to amend without elaboration. J.A. 182-87.

## II.

Tibbetts first contends that the district court erred in dismissing his Complaint under FRCP 12(b)(6). Our review of this issue is *de novo*. *Stuart Circle Hospital Corp. v. Aetna Health Management*, 995 F.2d 500 (4th Cir. 1993). Like the district court, we must assume all facts pled by Tibbetts to be true. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

## A.

Tibbetts' First Amended Complaint contends that Defendants engaged in malicious prosecution and abuse of process by filing the Motion to Reconvert the lawsuit from a Chapter 13 reorganization to a Chapter 7 liquidation. The district court dismissed the abuse of process and malicious prosecution counts on the grounds that: (i) the statute of limitations barred the counts; and (ii) Tibbetts failed to allege a prima facie case on either count. J.A. 184-86. We need not decide whether the statute of limitations bars the counts[9] because we find that

[9]There is a dispute over what date the U.S. Bankruptcy Court "rendered" its Order dismissing Tibbetts' bankruptcy petition, thereby triggering the statute of limitations. Appellees contend that the accrual date is November 30, 1998, the date on which the bankruptcy judge signed

the Complaint failed to allege a prima facie case of either malicious prosecution or abuse of process. Accordingly, the district court properly dismissed these counts under FRCP 12(b)(6).

We note as a threshold matter that both malicious prosecution and abuse of process claims require some sort of "process." To be potentially guilty of malicious prosecution, Defendants must have initiated a "proceeding" against Tibbetts. *See Tomai-Minogue v. State Farm Mut. Auto. Ins. Co.*, 770 F.2d 1228, 1236-37 (4th Cir. 1985). To be liable for abuse of process, Defendants must have used "process not proper in the regular prosecution of proceedings." *See Triangle Auto Action, Inc. v. Cash*, 380 S.E.2d 649, 650 (Va. 1989).

It is an open question whether the filing of a motion to reconvert constitutes process.[10] We need not decide this issue, however, because we find that Tibbetts' Complaint cannot satisfy the other elements of a prima facie case for malicious prosecution or abuse of process.

1.

A prima facie case for malicious prosecution requires that: (i) the defendants instituted a prior proceeding against the plaintiff; (ii) the

---

the Order dismissing Tibbetts' bankruptcy petition. Tibbetts contends that the accrual date is December 2, 1998, the date on which the Order was stamped, entered on the docket, and made part of the public record. It appears that December 2, 1998 is the preferable date. Nevertheless, because the malicious prosecution and abuse of process claims are fatally flawed, the Court need not decide the statute of limitations issue.

[10]Tibbetts contends that the filing of a motion to reconvert is the equivalent of process because it is a "contested matter" under the Federal Bankruptcy Rules. Accordingly, the motion is served in the same manner as service of a summons and complaint, and it has all the "attributes of a lawsuit." Defendants disagree, contending that the filing of a motion to reconvert is not the equivalent of process because the motion does not institute a new proceeding. Defendants cite to Black's Law Dictionary, which defines process as "any means used by the court to acquire or exercise jurisdiction over a person or over specific property." In this case, Tibbetts had already consented to the jurisdiction of the bankruptcy court when he initially filed for Chapter 7 protection.

proceeding was instituted without probable cause; (iii) the proceeding was instituted with malice; (iv) the underlying proceeding terminated in the plaintiff's favor; and (v) the plaintiff sustained special damages as a result of the proceeding. *See Tomai-Minogue*, 770 F.2d at 1236-37.

Tibbetts is unable to satisfy the fifth element requiring special damages.[11] Under Virginia law, a showing of special damages means "proof of a special loss or unusual hardship resulting from the malicious prosecution," and "'excludes secondary consequences that are common and often unavoidable. . . .'" *Ayyildiz v. Kidd*, 266 S.E.2d 108, 111 (Va. 1980) (citing *O'Toole v. Franklin*, 569 P.2d 561, 563 (Or. 1977)); *Ely v. Whitlock, et al.*, 385 S.E.2d 893, 895-96 (Va. 1989).

In *Ayyildiz*, a doctor brought a malicious prosecution claim against a former patient who had unsuccessfully sued him for malpractice. 266 S.E.2d 108. The doctor claimed that he had suffered special injuries including "costs to defend the malpractice action, injury to his professional reputation and good name, [and] the loss of present and future earnings and profits from his profession." *Id.* at 111. The Virginia Supreme Court affirmed the dismissal of the suit on the grounds that the doctor had suffered no injury "that would not stem normally from a medical malpractice suit." *Id.* at 112. Specifically, the court held that the inconvenience of defending a meritless malpractice action did not qualify as special damages because such an injury was common to any physician who had to defend a malpractice suit. *Id.*

Tibbetts claims that Yale's Motion to Reconvert caused the following special injuries: (i) his property right in his lawsuit was "seized"; (ii) he was unable to obtain relief from his pressing debts; and (iii) he could not rectify his "financial situation" with state and federal student loan authorities. It is difficult to analyze Tibbetts' contentions. He is apparently arguing that Yale, by filing the Motion to Reconvert, interfered with his ability to pursue a Chapter 13 reorganization,

---

[11]We make no decision on whether the allegations in Tibbetts' Complaint were sufficient to allege the other four elements required of a malicious prosecution claim.

attempted to seize control of his lawsuits by settling them, and frustrated his efforts to resolve his financial problems.

These injuries simply do not amount to a "special injury." By filing for bankruptcy, a debtor necessarily subjects himself to the bankruptcy court, whose procedures may be invoked by creditors with either acknowledged or disputed claims. The delays and uncertainty occasioned by motions practice in the bankruptcy court are common consequences attending bankruptcy cases. Bankruptcy is, after all, an adversary proceeding, in which creditors are entitled to a voice. Tibbetts' argument also fails to acknowledge that he, himself, terminated the bankruptcy proceedings before the bankruptcy court had ruled on the Motion to Reconvert.[12] Accordingly, we conclude that the district court properly dismissed Tibbetts' malicious prosecution claim under FRCP 12(b)(6) because he failed to allege a special injury.

2.

Abuse of process is "the wrongful *use* of process *after* it has been issued." *Triangle Auto Action*, 380 S.E.2d at 650 (emphasis in original); *see also Donohoe Construction Co., Inc. v. Mount Vernon Assoc.*, 369 S.E.2d 857, 862 (Va. 1988) ("The gravamen of the tort lies in the abuse or perversion of the process after it has been issued."). The elements of a prima facie case of abuse of process are: (i) existence of an ulterior motive, and (ii) an act in the use of process not proper in the regular prosecution of the proceedings. *Triangle Auto Action*, 380 S.E.2d at 650.

Tibbetts contends that Yale filed the Motion to Reconvert with the ulterior motive of forcing "an unfair settlement" and liquidating Tibbetts' lawsuit against the University. Appellant's Brief at 25. He further contends that Yale's improper use of the Motion (which Tibbetts contends is "process") is evidenced by: (i) the submission of a time-barred claim (the bursar's claim); (ii) the purchase of claims from other creditors; (iii) the submission of false and misleading informa-

---

[12]Because Tibbetts dismissed his bankruptcy case, the Motion to Reconvert did not terminate in his favor as required by *Tomai-Minogue v. State Farm Mut. Auto. Ins. Co.*, 770 F.2d 1228, 1236-37 (4th Cir. 1985).

tion to extend the statute of limitations on the time-barred claim; (iv) misrepresentations that amounted to a false bankruptcy claim; (v) the misuse of the Trustee to liquidate Tibbetts' assets; (vi) the filing of a motion not in the best interest of the creditors; and (vii) the filing of a motion not in the best interest of the U.S. Government. *Id.* at 25-26.

Tibbetts' allegations are insufficient to satisfy the second element of an abuse of process claim, which requires "some 'perversion of regularly-issued process to accomplish some ulterior purpose for which the procedure was not intended.'" *Triangle Auto Auction*, 380 S.E.2d at 651 (citing *Donohoe*, 369 S.E.2d at 862). As stated in *Donohoe*, "[a] legitimate use of process to its authorized conclusion, even when carried out with bad intention, is not" abuse of process. 369 S.E.2d at 862.

In *Donohoe*, Mount Vernon Associates alleged that Donohoe Construction had filed a mechanic's lien on Mount Vernon's nursing home, which Donohoe had built, with the ulterior motive of obtaining concessions on construction disputes. 369 S.E.2d at 860. Mount Vernon presented evidence that Donohoe knew or should have known that the lien was invalid, but nonetheless filed the lien to force Mount Vernon to the bargaining table.

The Virginia Supreme Court rejected Mount Vernon's claim despite evidence of Donohoe's bad intent in filing the lien. There was insufficient evidence, concluded the court, that after filing the lien Donohoe engaged in any "act in the use of the process not proper in the regular prosecution of the proceeding," as required by the second element of an abuse of process claim. *Id.* at 862-63.

Similar to *Donohoe*, Tibbetts' allegations are directed at Yale's allegedly improper motives for filing the Motion to Reconvert. Tibbetts fails to allege that Yale's prosecution of its motion was irregular. Accordingly, the district court properly dismissed this count under FRCP 12(b)(6).

## B.

We next turn to Count Five of Tibbetts' Complaint, alleging that Yale's Motion to Reconvert amounted to vexatious litigation in violation of Connecticut law.[13]

Applying the well established principle that a court, sitting in diversity, must apply the substantive law of the state where the injury occurred, the district court dismissed this count on the grounds that the alleged tort (the filing of the Motion to Reconvert) occurred in Virginia. Accordingly, the court reasoned, Virginia substantive law, and not Connecticut law, should apply.

On appeal, Tibbetts contends that the tort, in fact, occurred in Connecticut because Yale and the other appellees conspired in Connecticut to file the motions in the Eastern District of Virginia. We find Tibbetts' argument to be without merit. Tibbetts complains of a wrong inflicted by the filing of the Motion to Reconvert. The Motion to Reconvert was filed in Virginia. Connecticut does not become the place of injury even if the appellees planned filing the motion while in Connecticut. Accordingly, the district court properly dismissed Count Five on the grounds that Connecticut law is inapplicable.

## III.

Tibbetts next contends that the district court was wrong to deny his Motion for Leave to File a Second Amended Complaint, especially given his *pro se* status. We disagree.

---

[13]Connecticut law provides that:

> [a]ny person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages.

Conn. Gen. Stat. §52-568 (2002).

Appellate review of the denial of a motion for leave to amend is governed by the abuse of discretion standard. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Pittson Co. v. United States*, 199 F.3d 694, 705 (4th Cir. 1999). This standard of review "mandates a significant measure of appellate deference to the judgment calls of trial courts." *United States v. Pittman*, 209 F.3d 314, 316 (4th Cir. 2000).

As a general rule, a district court should deny a motion to amend only "'when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001); *see also Gordon v. Leeke*, 574 F.2d 1147, 1152-53 (4th Cir. 1978) (a *pro se* litigant is entitled to the opportunity to amend his pleadings if he has alleged a potentially meritorious cause of action). An examination of Tibbetts' proposed new counts for breach of contract and "malicious defense" reveals that they would be futile if filed.

The additional facts asserted in the proposed Second Amended Complaint would not cure the fatal defects in the malicious prosecution, abuse of process, and vexatious suit counts. These facts do not supply a special injury, or establish the improper use of process, or make Connecticut law applicable. Accordingly, the district court was correct in declining to allow Tibbetts to add the new but irrelevant allegations.

Tibbetts also sought to add a count for breach of contract. This count arises out of Chapter 11 of Yale's Student Handbook, entitled "Free Expression, Peaceful Dissent, and Demonstrations," which states that Yale has an "overriding commitment to free expression." Tibbetts contends that this handbook was a contract between Yale and its students, and that Yale breached the contract by attempting to force him back into Chapter 7 where the Trustee would settle his suits. Tibbetts' theory is that Yale, by plotting to terminate suits critical of the university, was endeavoring to stifle his free expression and peaceful dissent.

This claim is without merit. Chapter 11 of the Student Handbook is not a contract, but merely a university policy promoting free expression. Yale breached no contractual obligation to Tibbetts by

defending against his lawsuits and ultimately seeking to settle them. Furthermore, it is worth noting that the Trustee, not Yale, crafted the settlement agreement. In a Chapter 7 liquidation, the Trustee is vested with complete control over the liquidation of assets. Tibbetts makes no claim that the Trustee acted in bad faith.

Tibbetts also sought to add a count for "malicious defense" under Connecticut law. Tibbetts appears to argue that the Motion to Reconvert filed in the bankruptcy case amounts to an improper, backdoor effort by Yale and its attorneys to defend the Connecticut lawsuits. Tibbetts claims that Yale and its attorneys are, therefore, culpable of "malicious defense" under Connecticut General Statute § 52-568 cited in footnote 13. We doubt whether the Connecticut statute could be stretched so far. We need not decide this issue, however, because as stated *supra* p. 11, Connecticut law is inapplicable to a Motion to Reconvert filed in Virginia.

For the aforementioned reasons, Tibbetts' proposed amendments would have been futile. Accordingly, the district court properly denied Tibbetts' Motion for Leave to File a Second Amended Complaint.

## *CONCLUSION*

For the reasons stated herein, the judgment of the district court is affirmed.

*AFFIRMED*